United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-20226

FRED FREUDENSPRUNG,

Plaintiff-Appellant,

versus

OFFSHORE TECHNICAL SERVICES, INC.,
WILLBROS GROUP, INC.,
WILLBROS U.S.A., INC.,
WILLBROS ENGINEERS, INC.,
WILLBROS INTERNATIONAL, INC.,
WILLBROS WEST AFRICA, INC,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

This maritime action stems from injuries sustained by Fred Freudensprung ("Freudensprung")

while working as a barge leaderman on an offshore oil and gas project in Nigerian waters.

Freudensprung appeals the district court's orders staying litigation of his Jones Act and U.S. general

maritime law claims pending arbitration and denying his alternative motions for entry of a separate

judgment or clarification of the court's orders. Freudensprung also appeals the district court's order dismissing defendant Willbros West Africa, Inc., for lack of personal jurisdiction. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Freudensprung's Jones Act and U.S. general maritime law action asserted that he sustained permanently disabling injuries while working as a leaderman aboard a sea-going derrick barge off the coast of Lagos, Nigeria. Freudensprung had been assigned to work on the barge through the operation of two agreements pertinent to the instant dispute: a "Consultant's Agreement" between Freudensprung and Offshore Technical Services, Inc. ("OTSI"), a Texas-based corporation, and an "Offshore Personnel Supply Agreement" ( "Personnel Supply Agreement") between OTSI and the barge's owner and operator, Willsbro West Africa, Inc. ("WWAI"), a Panamanian corporation. OTSI is an independent contractor that supplies experienced personnel, or "consultants," to the offshore hydrocarbon industry to perform work on offshore platforms. To that end, on November 26, 1997, OTSI entered into the Consultant's Agreement with Freudensprung, the stated purpose of which was to "effect the purchase of professional services . . . for hook-up, engineering, planning, inspection, . . . [and] pipeline work" "in order to discharge OTSI's own contractual obligations" to entities seeking such services. Pursuant to the Consultant's Agreement, Freudensprung agreed that he was retained as an independent contractor, not an employee, and further stipulated that he was not a seaman and thus would not claim any benefit under the Jones Act. The Consultant's Agreement contained a Texas choice-of-law provision as well as an arbitration clause requiring the parties to submit "any dispute" arising from the agreement to binding arbitration in Houston, Texas. The

2

agreement also expressly incorporated the terms of "any Work Order" issued to Freudensprung for a particular assignment.

On May 24, 2000, OTSI and WWAI entered into the Personnel Supply Agreement, pursuant to which OTSI agreed to supply technical, supervisory, and craft personnel to WWAI for the performance of WWAI's contracts in Africa relating to offshore marine operations, fabrication, inspection, installation, hook-up, and pipeline work. The Personnel Supply Agreement contained an English choice-of-law provision and an arbitration clause requiring OTSI and WWAI to submit any dispute related to the agreement to binding arbitration in Houston, Texas. Under the terms of the Personnel Supply Agreement, WWAI would pay OTSI certain stipulated daily rates for each worker provided, but all personnel supplied by OTSI would remain "employees of OTSI while . . . assigned to [WWAI]." WWAI, however, "would be fully responsible for the management and organization of the work performed on the offshore vessels to which OTSI personnel are assigned."

Shortly after retaining OTSI, WWAI contacted the company with a request for consultants for a WWAI project in Nigeria. Ultimately, WWAI selected Freudensprung from among the candidates referred by OTSI. By Work Order No. 4, dated June 9, 2000, OTSI and Freudensprung agreed that Freudensprung would work for WWAI as a barge leaderman in West Africa. Like their Consultant's Agreement, Work Order No. 4 contained a clause requiring binding arbitration of any "contractual disagreements, claims or disputes of any nature" that might arise between OTSI and Freudensprung.

On July 1, 2000, Freudensprung departed for Africa to begin his assignment aboard WWAI's seagoing derrick barge, the W B 318. The project involved the installation of a single point mooring system ("SPM"), a marine structure that facilitates the loading and offloading of oil tankers from

3

onshore tanks. On July 28, 2000, Freudensprung and other crew members were charged with securing the SPM to the ocean floor with twelve large chains. This task required laying the chains over the side of the WB 318 and gradually lowering them by winches and cables. The chains were several hundred feet in length and each chain link weighed in excess of two hundred pounds. As the crew lowered the second chain, the cable on the stern winch failed, releasing the heavy chain. The runaway chain struck Freudensprung from behind, causing him severe and permanently disabling mental and physical injuries that rendered him unable to work.

On October 4, 2001, Freudensprung filed this maritime action in federal district court against OTSI and several alleged subsidiaries of Willbros Group, Inc., including Willbros USA, Inc., Willbros Engineering, Inc., and foreign subsidiaries WWAI and Willbros International, Inc. In his complaint, Freudensprung asserted claims under the Jones Act, 46 U.S.C. app. § 688 (2000), and the U.S. general maritime law for negligence, vessel unseaworthiness, and maintenance and cure. On December 21, 2001, defendant WWAI filed a motion to dismiss the suit for lack of personal jurisdiction and insufficient service of process. In response, Freudensprung amended his complaint, adding Willbros Group, Inc., the alleged parent company of WWAI, and modifying the place where service could be properly effected upon WWAI. Nonetheless, on February 20, 2002, the district court granted without prejudice WWAI's motion to dismiss for lack of jurisdiction. OTSI then moved the district court to stay Freudensprung's claims pending arbitration, citing the arbitration clause in its Consultant's Agreement with Freudensprung. Freudensprung responded by arguing that the agreement was a seaman's contract of employment and thus exempt from arbitration, and furthermore that arbitration was inappropriate under both federal and state law. In its order of August 15, 2002, the district court granted OTSI's motion without assigning reasons and ordered

4

the case administratively closed. The order further granted leave to move to reinstate the case on the district court's active docket "within ten (10) days from the date of a ruling by the Court of Appeals."

On August 26, 2002, Freudensprung filed a motion for reconsideration, which the district court also denied in an order entered on October 15, 2002. Finding the language in the district court's August 15 order staying the case unclear, Freudensprung filed a motion for entry of judgment or, alternatively, a motion for clarification, on November 15, 2002. In his motion, Freudensprung requested that if the district court had intended to enter a final order from which he could appeal, that the district court enter a separate document setting forth the judgment as required under Federal Rule of Civil Procedure 58. If the court did not so intend, Freudensprung asked that the district court clarify that the stay would extend only until after arbitration of his claims and not until after a decision by this Court. In response, OTSI argued that Freudensprung's motion was simply a second motion for reconsideration and that it should be denied because the August 15, 2002 order was a "final appealable order." On January 13, 2003, the district court denied Freudensprung's motion for entry of judgment and refused to clarify its order staying Freudensprung's claims. On February 12, 2003, Freudensprung filed notice of appeal from the district court's orders staying his claims pending arbitration and administratively closing the case, denying entry of judgment or clarification of its stay, and dismissing WWAI for lack of personal jurisdiction.

## DISCUSSION

On appeal, Freudensprung advances several points of error regarding the district court's order compelling arbitration and staying his claims and its dismissal of WWAI for lack of jurisdiction. Before addressing the merits of these assertions, however, we must first address the timeliness of Freudensprung's February 12, 2003, notice of appeal, which was filed more than five months after

the district court's August 15, 2002 order staying his claims pending arbitration and administratively closing the case.[1]

I.      Whether Freudensprung timely filed notice of appeal

"A timely filed notice of appeal is a jurisdictional prerequisite to [appellate review]." Dison v. Whitely, 20 F.3d 185, 186 (5th Cir. 1994).  Federal Rules of Appellate Procedure 4 (a) (1) (A) provides in pertinent part that "except as provi ded in Rules 4 (a) (1) (B), 4 (a) (4), and 4 (c), the notice of appeal . . . must be filed with the district clerk within 30 days after the judgment or order appealed from is entered."  (emphasis added).  Rule 4 (a) (7) further provides that a judgment or order is deemed "ent ered" within the meaning of Rule 4 (a) when it is set forth on a separate document in compliance with Federal Rules of Civil Procedure  58 (a) (1) and entered on the district court's civil docket as required by Federal Rules of Civil Procedure 79 (a).

In this case, the timeliness of Freudensprung's February 12, 2003, notice of appeal depends on the effect of the district court's refusal to enter a separate document labeled a judgment for its August 15, 2002, order staying his claims pending arbitration and administratively closing the case. Certain amendments, effective December 1, 2002, were made to Federal Rule of Civil Procedure 58 and Federal Rule of Appellate Procedure 4 (a) (7) to resolve uncertainties concerning how Rule 4 (a) (7)'s "definition of when a judgment or order is deemed 'entered' interacts with the requirement in [Rule] 58  that, to be 'effective,' a judgment must be set forth on a separate document." Notes of Advisory Committee on Rules, 2002 Amendments, following Rule 4[2]  Amended Rule 58 (a) (1)

---

[1]The parties briefed this threshold jurisdictional question pursuant to this Court's order.

[2]These amendments became effective after entry of the district court's August 15, 2002, order staying Freudensprung's claims and its October 15, 2002, order denying reconsideration of its stay, but before Freudensprung filed notice of appeal, raising the question whether these

requires, in pertinent part, that "[e]very judgment and amended judgment be set forth on a separate document," but does not require a separate document "for an order disposing of a motion: . . . (D) for a new trial, or to alter or amend the judgment, under Rule 59."[3] Fed. R. Civ. P. 58 (a) (1) (2002). A separate document "provides the basis for the entry of judgment" and must be "distinct from any opinion or memorandum." Notes of Advisory Committee on Rules, 1963 Amendments, following Rule 58. For cases in which Rule 58 requires that a judgment or order be set forth in a separate document but there was none, both Rule 4 (a) (7) and Rule 58 have been amended to provide that such judgment or order is deemed entered -- and the 30-day time period to file notice of appeal starts to run -- upo n expiration of 150 days from the date of entry of the judgment or order on the civil docket.[4] See Fed. R. App. P. 4 (a) (7) (A) (ii) (2002); Fed. R. Civ. P. 58 (b) (1)-(2) (2002).

changes apply retroactively in the instant case. Our jurisprudence requires that the "'amended Rules [and, specifically, amendments to Rule 4] , . . . be given retroactive application to the maximum extent possible . . . unless their application [in the case at hand] would work injustice.'" Burt v. Ware, 14 F.3d 256-60 (5th Cir. 1994) (quoting Skoczylas v. Federal Bureau of Prisons, 961 F.2d 543, 546 (5th Cir.1992)). On the peculiar facts of this case, we would reach the same conclusion concerning the timeliness of Freudensprung's notice of appeal under the former or amended versions of Rule 58 and Rule 4 (a) (7). Accordingly, it cannot be said that the retroactive application of the amended rules would "work injustice," and we therefore find that the newly amended appellate and civil procedure rules do indeed apply retroactively in this case. See Skoczylas, 961 F.2d at 545.

[3]Former Rule 58 simply required that "[e]very judgment and amended judgment be set forth on a separate document," without exception.

[4]Previously, no such cap existed, meaning that as construed in this Circuit, where a required separate document was lacking, the time limit to file notice of appeal never began to run; thus parties were "given forever to appeal (or to bring a postjudgment motion)." Notes of Advisory Committee on Rules, 2002 Amendment, following Rule 4; Hammack v. Baroid Corp., 142 F.3d 266, 269-70 (5th Cir. 1998); see Townsend v. Lucas, 745 F.2d 933, 934 (5th Cir. 1984) (remanding the case to allow appellant to move for entry of a separate judgment document from which he could appeal within 30 days of entry of that document even though appellant did not file his initial notice of appeal until more than eight months after entry on the docket of the contested judgment that should have been set forth on a separate document but was not).

OTSI and WWAI concede that the district court never entered a separate judgment document for its August 15, 2002, order staying Freudensprung's claims. The ruling itself is entitled "ORDER," and nowhere even mentions the words "judgment" or "final judgment." OTSI and WWAI nonetheless argue that no such separate document was required in this case because the order became final and appealable, and thus immediately subject to the 30-day time limit for filing notice of appeal, on the August 15, 2002, docket entry date of that order. Specifically, OTSI asserts that the order constituted a final appealable order for which no separate document was required because the order "administratively closed" the case, authorized an immediate appeal to this Court, and neither recited lengthy factual and legal conclusions nor indicated that a separate document would be issued. In support of its contention that the August 15, 2002, order was final and appealable, and thus not subject to the separate document requirement, WWAI relies primarily on American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 707-08 (5th Cir. 2003), in which this Court held that an order compelling arbitration, staying the underlying litigation, and administratively closing the case, constituted a final appealable decision. According to OTSI and WWAI, therefore, Freudensprung's notice of appeal was not timely because he failed to file it within 30 days of the district court's August 15, 2002 order staying his claims and administratively closing the case. We disagree.

That the August 15, 2002, order was final and otherwise appealable does not in itself excuse the district court from Rule 58's separate document requirement. As we have previously stated, "[f]inality of a judgment, appealability of a judgment, and the separate document requirement are different concepts, but are often confused." Theriot v. ASW Well Serv. Inc., 951 F.2d 84, 87-88 (5th Cir 1992). It is true that in American Heritage, we held that an order "administratively closing" the case was tantamount to an order dismissing the case, and thus satisfied the Federal Arbitration

8

Act's requirement that the order compelling arbitration be final to be appealable. American Heritage, 294 F.3d at 708; see 9 U.S.C. § 16(a) (3) (providing for "immediate appeal of any 'final decision'" with respect to arbitration, regardless of whether such decision is favorable or hostile to arbitration). American Heritage, however, concerned only whether the ruling at issue was interlocutory or final in nature, as the Federal Arbitration Act does not permit interlocutory appeals from orders compelling arbitration. See American Heritage, 294 F.3d at 708. The separate document rule was not at issue in American Heritage, presumably Rule 58 had been satisfied in that case.

Moreover, our opinion in Theriot forecloses extending American Heritage to the proposition advanced by the appellees -- namely, that the finality of an order administratively closing a case obviates Rule 58's separate document requirement. See Theriot, 951 F.2d at 87-88. In Theriot, we held that a minute entry on the district court's docket recording the grant of summary judgment "cannot constitute a 'separate document' for the purpo ses of meeting the Rule 58 requirement," regardless of whether that judgment was "otherwise appealable as a final order or as an interlocutory order." Theriot, 951 F.2d at 87-88; accord, Transit Mgmt of Southeast LA., Inc. v. Group Ins. Admin., Inc., 226 F.3d 376, 382 (5th Cir. 2000). Applying former Rule 58 in Theriot, we observed that the rule applied to "'[e]very judgment,' with 'judgment' defined as 'a decree or any order from which an appeal lies,'" and thus concluded that even otherwise final and appealable orders "still [had to] comply with Rules 58 and 79 (a) before an appeal [could] be taken." Theriot, 951 F.2d at 88.

The rules of appellate and civil procedure applicable in this case similarly contain no exemption of orders staying litigation of claims from the separate document requirement, even if such order is final. See Theriot, 951 F.2d at 87-88. To the contrary, amended Rule 58 requires that "[e]very judgment and amended judgment [except orders disposing of certain enumerated post-

9

judgment motions, including Rule 59 motions to alter or amend the judgment] be set forth on a separate document." While we construe Freudensprung's August 26, 2002, motion for clarification of the district court's August 15, 2002, order staying his claims as a Rule 59 motion, see Burt, 14 F.3d at 259-60, amended Rule 58's exemption from the separate document requirement of the district court's October 15, 2002, order denying this motion does not excuse the district court's failure to enter a required separate document for its August 15, 2002 order. As the Notes of the Advisory Committee on the 2002 amendments to Rule 58 instruct,

> Many of the enumerated motions [in Rule 58 (a) (1) (A)-(E)] are frequently made before judgment is entered. The exemption of the order disposing of the [enumerated] motion [from the separate document requirement] does not excuse the obligation to set forth the judgment itself on a separate document. And if disposition of the motion results in an amended judgment, the amended judgment must be set forth on a separate document.

Accordingly, because the August 15, 2002, order lacked a required separate document, under amended Rules 4 and 58 (b), the order was not deemed "entered" -- and the time to file notice of appeal did not begin to run -- until expiration of the 150-day period following the August 15 docket entry date of that order. As noted above, Rule 4 (a) (1) (A) provides that in civil cases such as this one, a notice of appeal is timely if filed within 30 days from such "entry of judgment." Freudensprung's February 12, 2003, notice of appeal, which was filed on the 30th day after a judgment was deemed entered, was therefore timely filed. In sum, we have repeatedly recognized that Rule 58 "should be interpreted to prevent loss of the right to appeal, not to facilitate loss," and see no reason to depart from this principle in this case. Hammack v. Barroid Corp., 142 F.3d 266, 269 (5th Cir. 1998) (quoting Bankers Trust Co., 435 U.S, at 385); accord, Theriot, 951 F.2d at 88 (citing In re Seiscom Delta, Inc., 857 F.2d 279, 283 (5th Cir.1988)).

II.     The propriety of the district court's order compelling arbitration of the Jones Act and U.S. general maritime law claims against OTSI

Having determined that Freudensprung's notice of appeal was timely, we now turn to Fruedensprung's assertion that the district court erred by compelling arbitration of his Jones Act and U.S. general maritime law claims against OTSI.   We affirm.

A.     Standard of review

We review a district court's ruling on a motion to compel arbitration and to stay litigation <u>de novo</u>.  <u>Hadnot v. Bay, Ltd.</u>,  344 F.3d 474, 476 (5th Cir. 2003) (citing <u>Webb v. Investacorp, Inc</u>. 89 F.3d 252, 257 (5th Cir.1996)); <u>Complaint of Hornbeck Offshore (1984) Corp. v. Coastal Carriers Corp.</u>, 981 F.2d 752, 754 (5th Cir. 1993).   A district court's interpretation of the scope of an arbitration agreement is also subject to this Court's plenary review. <u>See</u> <u>Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.</u>, 139 F.3d 1061, 1065 (5th Cir. 1998).

B.     Scope and enforceability of the arbitration agreement

Freudensprung primarily contends that he is exempt from arbitrating his Jones Act and maritime law claims because his Consultant's Agreement with OTSI constitutes a seaman's employment contract and, as such, is expressly excluded from coverage under the Federal Arbitration Act ("FAA" or "Arbitration Act") by virtue of Section 1 of that statute.   OTSI counters that this statutory exemption does not apply to Freudensprung, arguing that Freudensprung is not a seaman for the purposes of the Jones Act or the FAA, that he is an independent contractor, and that, consequently, the parties' agreement is not a seaman's "contract of employment."    Both Freudensprung and OTSI advance strong arguments in support of their respective positions on this point.  However, our thorough review of the parties' oral and written arguments and the record in this case reveals that it is unnecessary to decide today whether their Consultant's Agreement may be

11

properly deemed a seaman's employment contract in order to determine the arbitrability of Freudensprung's claims. As OTSI correctly points out in its most recent submission to this Court,[5] on the peculiar facts of this case, even assuming arguendo that the Consultant's Agreement is a seaman's employment contract, the arbitration agreement contained therein is nonetheless enforceable pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"),[6] as implemented by the United States through 9 U.S.C. §§ 201-208 ("Convention Act"), which we conclude governs concurrently with the FAA in this case.[7]

---

[5]By letter of October 7, 2003, submitted pursuant to Federal Rule of Appellate Procedure 28 (j) after Freudensprung filed his reply brief but prior to oral argument, OTSI argues for the first time on appeal that the Convention and its implementing legislation compel enforcement of the arbitration agreement at issue in this case, directing this Court's attention to our opinion in Francisco v. Stolt Achievement MT, 293 F.3d 270, 274 (5th Cir.), cert. denied 537 U.S. 1030 (2002). Although we may, in our discretion, decline to entertain an issue not raised in the trial court, we choose to address this purely legal question here. See Bridges v. City of Bossier, 92 F.3d 329, 335 (5th Cir. 1996). We note that OTSI did argue, both before the trial court and in its brief on appeal, that Section 1 of the FAA does not exempt Freudensprung from arbitrating his claims. See Bridges, 92 F.3d at 335 (electing to liberally construe argument which appellant raised only indirectly in the trial court and in its initial brief to hold that the variation on the original argument was not waived to the extent it presented purely a legal question). Moreover, we may affirm the district court on any ground supported by the record, see Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 511 (5th Cir.2001), and it is our duty to enunciate the correct law on the record facts. See Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972) (stating that "[n]either the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility").

[6]Done June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, reprinted in 9 U.S.C.A. § 201 note.

[7]The Consultant's Agreement contains a choice-of-law clause providing that "the Laws of the State of Texas" shall govern "[t]he construction, validity, and performance of this Agreement and all matters pertaining thereto." Citing this clause, Freudensprung asserts that he is also exempt from arbitration because the Texas General Arbitration Act ("TGAA") prohibits arbitration of personal injury claims except under circumstances not presented here. TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.002 (a) (3) and (c) (Vernon Supp. 2000). The parties dispute whether Freudensprung's broader assertion before the trial court that Texas law prohibited arbitration properly preserved his more precise argument raised for the first time on

Title 9 of the United States Code contains both the FAA and the U.S. implementing legislation for the Convention. The FAA generally declares valid and enforceable written provisions for arbitration in any maritime transaction and in any contract evidencing a transaction involving interstate or foreign commerce. See 9 U.S.C. § 2. Section 1 of the FAA, upon which Freudensprung relies, excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from the scope of the Arbitration Act. When the Convention Act governs the recognition and enforcement of an arbitration agreement or award, however, the FAA applies only "to the extent that [the FAA] is not in conflict with [the Convention Act] or the Convention as ratified by the United States." See 9 U.S.C. § 208; Francisco v. Stolt Achievement MT, 293 F.3d 270, 274 (5th Cir.), cert. denied 537 U.S. 1030 (2002). As we have recently recognized, unlike the FAA, neither the Convention, the ratifying language of the Convention, nor the Convention Act "recognize[s] an exception for seaman employment contracts."

---

appeal. We need not address whether this argument is waived, however, because the argument is without merit. Where, as here, an agreement contains a clause designating Texas law but does not exclude the FAA, the FAA and Texas law, including that state's arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state. See Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc., 343 F.3d 355, 361 (5th Cir. 2003) (citing L & L Kempwood Associates v. Omega Builders, Inc., 9 S.W.3d 125, 127-28 & n. 15 (Tex.1999)). The FAA, in turn, preempts state laws which, like the provision of the TGAA relied upon by Freudensprung, "contradict the purpose of the FAA by 'requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.'" See id. at 362 & n. 35 (citing Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)); Miller v. Public Storage Mgmt., Inc., 121 F.3d 215, 217-19 (5th Cir.1997) (rejecting assertion that Texas law disfavoring arbitration of personal injury claims precluded compelling arbitration because the FAA preempts contrary state law).

13

Francisco, 293 F.3d at 274. "On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered 'commercial,' and . . . an employment contract is 'commercial.'" Id.

In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry. See id. at 273 (citing Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1144-45 (5th Cir.1985)). Accordingly, a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; "(3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." Id. (citing Sedco, 767 F.2d at 1146 (citing Ledee v. Ceramiche Ragno, 684 F.2d 184, 185-86 (1st Cir.1982))). Once "these requirements are met, the Convention requires the district court[] to order arbitration," id., "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." Sedco, 767 F.2d at 1146 (quoting Convention, Article II (3)).

In this case, the first three requirements are readily met. As noted above, Freudensprung signed a written Consultant's Agreement which contained an arbitration clause requiring the parties to submit "any dispute" arising from the agreement to binding arbitration in Houston, Texas; the United States is a signatory to the Convention; and the agreement, which retained Freudensprung to perform "hook-up, engineering, planning, inspection, . . . [and] pipeline work," arises out of a "commercial legal relationship." See Francisco, 293 F.3d at 273; 9 U.S.C. § 202 (defining a commercial legal relationship as "including a transaction, contract, or agreement described in section 2 of [Title 9]"--that is, either a maritime transaction or a contract involving commerce). However,

14

because both Freudensprung and Texas-based OTSI are U.S. citizens,[8] we must further examine whether the lack of a foreign citizen as a party to the agreement renders the Convention inapplicable. We conclude that it does not.

This Court has yet to address whether the Convention applies to an arbitration agreement between two U.S. Citizens. We note at the outset that this Court's four-prong test, therefore, was articulated previously in the context of cases involving at least one foreign party to the agreement and derives from this Court's opinion in Sedco, which in turn paraphrases the four criteria set forth by the First Circuit in Ledee. See Sedco, 767 F.2d at 1146 (citing Ledee, 684 F.2d at185-86). The First Circuit, however, closely tracking the language of 9 U.S.C. § 202, did not require the presence of a non-U.S. party in all circumstances, instructing that the fourth criterion requires that courts ask: "Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?" See Ledee, 684 F.2d at 185-86 (emphasis added). Consistent with this approach, the only federal appellate courts to have addressed the applicability of the Convention to an arbitration agreement between two U.S. citizens, the Second Circuit and the Seventh Circuit, agree that the Convention may apply in such cases provided that there is a "reasonable relation" between the parties' commercial relationship and some "important foreign element." Jones v. Sea Tow Servs., Inc, 30 F.3d 360, 366 (2d Cir. 1994); Lander Co. v. MMP Investments, Inc., 107 F.3d 476, 481 (7th Cir. 1997). This principle stems from the language of 9 U.S.C. § 202 of the U.S. implementing legislation for the Convention, entitled "Agreement or award falling under the Convention," which provides:

---

[8]Section 202 of the Convention Act provides that "[f]or the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202.

15

> An arbitration agreement or arbitral award arising out of a [commercial] legal relationship, whether contractual or not, . . . including a transaction, contract, or agreement described in section 2 of [the FAA], . . . which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless the relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202. In Jones, the Second Circuit found on the facts before it that the commercial relationship between the U.S. citizen disputants lacked the requisite "foreign element" and thus the arbitration agreement arising from that relationship was not governed by the Convention. 30 F.3d at 366. In that case, U.S. citizens hired a U.S. salvor pursuant to a Lloyd's standard form salvage agreement ("LOF") to rescue their yacht, which had grounded in U.S. waters off Long Island, New York. Id. at 361-62. The relationship between the parties "did not involve property abroad nor did it envisage performance abroad." Id. at 365. The only purportedly foreign element in this otherwise wholly domestic matter was found in the LOF itself, which contained an arbitral clause providing for arbitration in England under English law. Id. at 362. The Second Circuit found that "[t]he reasonable relation requirement necessary to make the arbitration provision in the LOF cognizable under the Convention" could not be fulfilled by the terms of the LOF itself -- that is, the LOF's arbitration provision and its English choice-of-law clause. Id. at 366. Rather, the Jones Court reasoned, there had to be some reasonable connection to a foreign country independent of these provisions in the LOF.

The present case, however, is distinguishable from Jones, 30 F.3d at 362, because the agreement at issue, albeit between two U.S. Citizens, Freudensprung and OTSI, "envisage[d] performance abroad" -- the performance of pipefitting services on WWAI's barges in West Africa. Lander, however, involved circumstances similar to those before us. See 107 F.3d at 481. The

16

Seventh Circuit found in Lander that 9 U.S.C. § 202, though phrased in the negative, applied (concurrently with the FAA) to an arbitration agreement in a contract between two U.S. corporations where the only link between their relationship and a foreign nation was that their contract was to be performed in Poland. Id. at 478, 481. In that case, the two U.S. corporations, MMP and Lander, entered into a contract for the distribution by MMP in Poland of products manufactured by Lander in the United States. Id. at 478. The contract contained an arbitration clause providing that disputes would be subject to binding arbitration to be conducted in New York. Id. Athough both parties were U.S. citizens, the arbitration was to take place in the United States, and the only foreign connection to the parties' legal relationship was that the distribution contract "envisage[d] performance . . . abroad," the Seventh Circuit concluded that the parties' agreement fell squarely within the Convention Act's scope and squarely outside its exclusion for agreements that have no foreign tie. Id. at 482 (noting that 9 U.S.C. § 202 "adopts the provisions of the Convention for any arbitration agreement . . . arising out of a [commercial] legal relationship, . . . provided only that if the relationship is entirely between U.S. citizens, it must involve performance abroad or have some other reasonable relation with a foreign country").

In this case, both Jones and Lander compel the conclusion that the Convention Act governs the arbitral clause at issue concurrently with the FAA because there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself. See Lander, 107 F.3d at 482; Jones, 30 F.3d at 364-65. As noted above, the Consultant's Agreement between Freudensprung and OTSI "envisage[d] performance . . . abroad." Accordingly, even assuming that the Consultant's Agreement is a seaman's employment contract, we conclude that its arbitral clause is enforceable under the Convention as implemented by Congress.

17

Finally, we reject Freudensprung's assertion that the arbitration agreement is unenforceable because OTSI failed to demonstrate that it was fair. Under the FAA, a written arbitration agreement is prima facie valid and must be enforced unless the opposing party -- here, Freudensprung, -- "allege[s] and prove[s] that the arbitration clause itself was a product of fraud, coercion, or 'such grounds as exist at law or in equity for the revocation of the contract.'" National Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326, 332 (5th Cir. 1987) (citation omitted); see 9 U.S.C. § 2. As indicated above, in this case the FAA applies "to the extent that it is not in conflict with the [Convention Act] or the Convention as ratified by the United States." See 9 U.S.C. § 208; Francisco, 293 F.3d at 274. The Convention imposes a mandatory obligation upon federal courts to enforce an arbitration agreement falling within its scope unless the agreement is "'null and void, inoperative, or incapable of being performed.'" See Sedco, 767 F.2d at 1146 (quoting Convention, Article II (3)). We need not address whether the FAA's contractual defenses conflict with those of the Convention, or whether they are any more inimical to the Convention's objective -- "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts," Francisco, 293 F.3d at 275 -- than they are to the longstanding federal policy favoring the enforcement of agreements to arbitrate disputes. See E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia, 876 F.2d 1168, 1173 (5th Cir. 1989) (citation omitted). In this case, Freudensprung has not alleged, let alone proffered any evidence, that would permit him to avoid arbitration under either standard. Indeed, Freudensprung has failed to point to any particular aspect of the agreement or circumstances surrounding its making that would render it unenforceable. Freudensprung instead merely rests on the vague assertion that a "pre-injury" agreement to arbitrate rather than litigate his personal injury claims is "inherently unfair" because he could not have made an informed decision

18

concerning his post-injury remedies before his injury had occurred and before any medical advice was available to him. The difficulty with this argument is that the same could be said of any advance agreement to arbitrate personal injury claims, and it is by now beyond cavil that such agreements are presumptively enforceable. As noted above, Freudensprung and OTSI agreed to arbitrate "any dispute" arising out of the Consultant's Agreement. It is "[o]nly by rigorously enforcing arbitration agreements according to their terms, do we 'give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.'" Ford v. NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243, 248-49 (5th Cir. 1998) (quoting Volt Information Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). Accordingly, we find that Freudensprung failed to demonstrate that the arbitration agreement was unfair.

III.     The propriety of the district court's order dismissing WWAI for lack of personal jurisdiction

Freudensprung next asserts that the district court erred by dismissing WWAI for lack of personal jurisdiction, arguing that WWAI had sufficient minimum contacts with Texas to support the district court's exercise of specific or general jurisdiction over WWAI. Alternatively, Freudensprung argues that WWAI impliedly consented to the district court's exercise of personal jurisdiction by agreeing pursuant to its Offshore Personnel Supply Agreement with OTSI to arbitrate any dispute with OTSI in Houston, Texas.[9] WWAI counters that it is a Panamanian corporation with its principal place of business in Panama, that it is a wholly-owned subsidiary of Willbros International,

---

[9]Freudensprung also argues that WWAI waived any objection to the exercise of personal jurisdiction by entering a general appearance and that this Court should equitably toll Freudensprung's claims against WWAI in the event that the district court's dismissal of WWAI for lack of personal jurisdiction is upheld. Freudensprung failed to raise either of these claims before the district court and we therefore decline to consider them on appeal. See Leverette Search Term End v. Louisville Ladder Co., 183 F.3d 339, 342 (5th Cir.1999).

Inc., also a Panamanian corporation, and that it does not have the necessary minimum contacts with Texas to be subject to the specific or general jurisdiction of that state's courts. Finding Freudensprung's arguments unavailing, we affirm.

A.      Standard of review and governing principles of law

This Court reviews <u>de novo</u> the district court's determination that its exercise of personal jurisdiction over a non-resident defendant is proper. <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>, 310 F.3d 374, 378 (5th Cir. 2002) (citing <u>Wilson v. Belin</u>, 20 F.3d 644, 647-48 (5th Cir.1994)). When, as in the instant case, "the district court decides the motion to dismiss without holding an evidentiary hearing, [the plaintiff] must make only a *prima facie* showing of the facts on which jurisdiction is predicated." <u>Id.</u> (citing <u>Alpine View Co. v. Atlas Copco AB</u>, 205 F.3d 208, 215 (5th Cir.2000)). In determining whether a <u>prima facie</u> case exists, this Court "must accept as true [the Plaintiff's] 'uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation.'" <u>Id.</u> (quoting <u>Kelly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841, 854 (5th Cir.2000) (internal citation omitted).

In an admiralty case, the propriety of the exercise of personal jurisdiction over a nonresident defendant, such as WWAI, is determined first by the law of the forum state. A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>STORMAN ASIA M/V</u>, 310 F.3d at 378 (citing <u>Adams v. Unione Mediterranea di Scurta,</u> 220 F.3d 659, 667 (5th Cir. 2000); <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 417 (5th Cir.1993)). In this case, these two inquiries merge into one because the Texas long-arm statute permits the exercise of jurisdiction over

20

a nonresident defendant to the fullest extent allowed by the United States Constitution. <u>See</u> TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2000); <u>Ruston Gas Turbines</u>, 9 F.3d at 417-18.

As interpreted by the Supreme Court, the Fourteenth Amendment Due Process clause requires satisfaction of a two-prong test in order for a federal court to properly exercise jurisdiction: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." <u>Asarco, Inc. v. Glenara, Ltd.</u>, 912 F.2d 784 (5th Cir.1990); <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945). The "minimum contacts" prong is further subdivided into contacts that give rise to specific jurisdiction and those that give rise to general jurisdiction. A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants contacts with the forum state. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408 (1984); <u>Asarco, Inc. v. Glenara, Ltd.</u>, 912 F.2d 784 (5th Cir.1990). In short, "[t]he focus [of this inquiry] is on the relationship between the defendant, the forum, and the litigation." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985). When a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum, however, a court may exercise general jurisdiction when the defendant has engaged in "continuous and systematic contacts" in the forum. <u>STORMAN ASIA M/V</u>, 310 F.3d at 378. Once the plaintiff has made out a <u>prima facie</u> showing under the first prong, the burden shifts to the defendant to show, under the second prong of the constitutional due process inquiry, that the exercise of jurisdiction would not comply with "fair play" and "substantial justice." <u>See</u> <u>id.</u>

B.     The sufficiency of WWAI's minimum contacts with Texas

Freudensprung first contends that WWAI has sufficient minimum contacts with Texas to sustain the exercise of specific jurisdiction over that defendant, pointing primarily to WWAI's business dealings with OTSI. Specifically, Freudensprung argues that WWAI has purposely availed itself of the benefits and protections of the state of Texas by (1) contracting with OTSI, a Texas-based corporation, pursuant to the Offshore Personnel Supply Agreement; (2) contemplating arbitration of any disputes with OTSI arising under that contract in Houston, Texas; (3) initiating and contemplating a long-term business relationship with OTSI; (4) engaging in communications with OTSI in developing and carrying out that contract; and (5) wiring payments to OTSI in Texas.

Our thorough review of the record and pertinent authorities convinces us that these limited contacts with the forum state were insufficient to support the exercise of specific jurisdiction over WWAI. At the outset, we note that Freudensprung is not a party to the contract between OTSI and WWAI -- the Offshore Personnel Supply Agreement -- which Freudensprung cites as evidence of WWAI's minimum contacts with the forum state. The Offshore Personnel Agreement provides that WWAI agrees to purchase professional services from OTSI for the performance of WWAI's projects in West Africa, that all personnel supplied by OTSI remained employees of OTSI while assigned to WWAI, and that WWAI was absolved of the ordinary liabilities flowing to an employer. Thus, strictly speaking, the instant litigation does not "arise out of or relate to" WWAI's contacts with Texas. See Coats v. Penrod Drilling Corp, 5 F.3d 877, 884 (5th Cir. 1993).

Even assuming that the instant controversy could be deemed to arise out of the Offshore Personnel Supply Agreement, the minimum contacts resulting from this agreement, viewed in conjunction with the other contacts alleged by Freudensprung, do not constitute the minimum contacts necessary to comport with constitutional due process. It is well established that "merely

22

contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 778 (5th Cir. 1986) (citing Colwell Realty Investments v. Triple T Inns, 785 F.2d 1330, 1334 (5th Cir.1986); Stuart v. Spademan, 772 F.2d 1185, 1192-93 (5th Cir.1985)); see also Burger King, 471 U.S. at 478. Moreover, this Court has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant. See, e.g., Holt, 801 F.2d at 778 (finding no specific jurisdiction over nonresident defendant where nonresident defendant entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas); Stuart, 772 F.2d at 1192-94 (finding no indication that the nonresident defendant intended to avail himself of the privilege of doing business in Texas and hence no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas).

Applying these principles here, it is apparent that Freudensprung has not alleged sufficient minimum contacts to warrant the exercise of specific jurisdiction over OTSI. As in Holt and Stuart, we find that in this case the fact that WWAI contracted with Texas-based OTSI, initiated and contemplated a long-term business relationship with OTSI, communicated with OTSI concerning the development and execution of the contract, and wired money to OTSI in Texas do not indicate that WWAI intended to avail itself of the privilege of doing business in Texas. See Holt, 801 F.2d at 778;

23

Stuart, 772 F.2d at 1194. The significance of these alleged minimum contacts is severely diminished by the fact that the contract at issue specified that it was to be governed by English law and that the material portions of the contract, which contemplated the supply of personnel to WWAI for its projects in West Africa, were to be performed in West Africa, not Texas. See Holt, 801 F.2d at 778 (discussing relevance of contract's choice-of-law provision and place of performance to minimum contacts analysis (citing Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir.1983); Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir.1985))).

The only other contact asserted by Freudensprung -- WWAI's contemplation of arbitrating disputes arising under the contract in Texas -- similarly does not weigh in favor of finding specific jurisdiction. Although in certain circumstances, an arbitration agreement may alter an otherwise decisive jurisdictional analysis by evidencing a nonresident's implied consent to personal jurisdiction, see Painewebber Inc. v. Chase Manhattan Private Bank, 260 F.3d 453 (5th Cir. 2001), this principle is inapplicable in the instant case where the arbitration agreement at issue only contemplates arbitration between WWAI and OTSI, not Freudensprung. Thus, even if WWAI may have expected to arbitrate disputes between itself and OTSI in Texas, it does not concomitantly follow that WWAI reasonably anticipated being haled into a Texas Court to defend a lawsuit brought by Freudensprung or any other nonparty to the Offshore Personnel Supply Agreement. Accordingly, we conclude that WWAI did not impliedly consent to being subject to the jurisdiction of the Texas courts for the adjudication of this particular dispute, and the arbitration provision at issue does not impact our jurisdictional analysis.

Freudensprung similarly has failed to demonstrate that WWAI had sufficient minimum contacts with Texas to justify the exercise of general jurisdiction over WWAI. As noted above, the

24

general jurisdictional inquiry focuses exclusively on whether the nonresident defendant's contacts with the forum unrelated to the cause of action are sufficiently "continuous and systemic" to satisfy due process requirements. Helicopteros, 466 U.S. at 414, 417. In this case, Freudensprung has asserted no contacts with Texas made by WWAI itself as evidence that the exercise of general jurisdiction is warranted. Rather, Freudensprung points to contacts made by Willbros Group, Inc. ("Willbros Group"), the alleged parent company of WWAI, as well as other Willbros companies, in support of his assertion that WWAI is subject to general jurisdiction in Texas courts. Citing Willbros Group's Form 10-K SEC filing, which defines "The Company" as "Willbros Group Inc., and all of its majority-owned subsidiaries," Freudensprung asserts that The Company, and hence, WWAI, is administered in Texas, leases offices in Texas, and has constructed a 45-mile gas pipeline in Texas and Mexico. Freudensprung also asserts that WWAI's general contacts with Texas include the following: (1) Willbros Group's principal place of business is in Houston, Texas, (2) Willbros Group's press releases are issued from Houston, Texas; (3) Willbros Group's conference calls originate from Houston, Texas; (4) Willbros Group's corporate officers reside in Houston, Texas; and (5) Willbros Group's corporate board meetings occur in Houston, Texas.

As a general rule, however, the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated. See Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 335 (1925) (declining to attribute, for jurisdictional purposes, the presence of a subsidiary in the forum state to a nonresident parent corporation where the parent and subsidiary maintained distinct and separate corporate entities); Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983) (observing that "[g]enerally, a foreign parent corporation is not subject to the jurisdiction of

a forum state merely because its subsidiary is present or doing business in the forum state"); see also Access Telecom, Inc. v. MCI Telecomm., Inc., 197 F.3d 694, 717 (5th Cir. 1999) (noting that "typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other"). This principle, however, is not inviolate. Rather, the presumption of institutional independence of related corporate entities may be rebutted by "clear evidence," which requires a showing of "something beyond" the mere existence of a corporate relationship between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident. Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999). Accordingly, our cases "[g]enerally . . . demand proof of control by [one corporation] over the internal business operations and affairs" of another corporation to make the other its agent or alter ego, and hence "fuse the two together for jurisdictional purposes." See Hargrave, 710 F.2d at 116 (collecting cases); accord, Dickson, 179 F.3d at 338. In determining whether a plaintiff asserting personal jurisdiction has overcome the presumption of corporate separateness, this Court considers the following nonexhaustive factors: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities. Hargrave, 710 F.2d at 1160.

Although Freudensprung protests that WWAI is indistinguishable from its parent and other Willbros companies, he has not asserted any facts, let alone adduced any evidence, demonstrating that any of the Hargrave factors compel the conclusion that Willros Group or the other Willbros entities controlled WWAI. Specifically, Freudensprung has made no showing that Willbros Group owned

26

stock in WWAI, shares any officers and directors with WWAI, disregards corporate formalities with WWAI, shares the same accounting system as WWAI, or that Willbros Group exercises any degree of control over the general policies or daily operations of WWAI. Further, Freudensprung concedes that WWAI's principle place of business is in Panama, while that of Willbros Group is in Texas. Although Freudensprung insists that WWAI is indistinguishable from Willbros Group, he only offers as evidence various printouts from websites -- primarily SEC filings related to all the Willbros entities, which are collectively referred to in these documents as "The Company." While such documents might arguably establish the existence of some corporate relationship between WWAI and the other Willbros entities, they are insufficient to overcome the presumption of corporate separateness. Accordingly, the contacts of Willbros Group and the other Willbros entities with Texas may not be attributed to WWAI in order to subject WWAI to service of process in Texas. We therefore conclude that the district court did not err in determining that WWAI lacked sufficient minimum contacts with Texas to support the exercise of personal jurisdiction.

C. Jurisdictional discovery

Freudensprung argues that the district court erred in denying him an adequate opportunity to conduct jurisdictional discovery in order to ascertain the extent of WWAI's contacts with Texas. Matters relating to discovery are committed to the discretion of the trial court, and we therefore review a district court's decision to deny a discovery request for abuse of discretion. Brown v. Arlen Management Corp. 663 F.2d 575, 580 (5th Cir. 1981). In this case, Freudensprung filed suit against WWAI and several other defendants on October 4, 2001. WWAI filed both its Rule 12 (b) motion to dismiss for lack of personal jurisdiction and its answer subject to that motion on December 21, 2002. Freudensprung did not file his response to WWAI's motion until January 11, 2002. In his

27

response, Freudensprung "expressly denie[d] the necessity of [additional time in which to conduct discovery]," but requested that such additional time be granted should the district court find "that its exercise of jurisdiction is any way questionable." In support of his response, Freudensprung attached only a copy of the Offshore Supply Agreement between WWAI and OTSI, and the various printouts from the internet described above. Nearly six weeks later, on February 20, 2002, the district court granted WWAI's motion to dismiss without prejudice. On appeal, Freudensprung states in his original brief that at the time the district court entered its order staying the case, on August 15, 2002, he "was attempting discovery into WWAI's contacts with Texas for the purpose of revisiting the district court's dismissal order." Freudensprung, however, has not asserted that he sought, scheduled, or took any depositions with respect to WWAI at any time prior to or after the district court's dismissal. Nor does the record reveal that he conducted any formal discovery as to WWAI during this nearly one-year period. Under these circumstances, we find that any inability of Freudensprung to conduct the extent of discovery he now requests was of his own making. Accordingly, we find that the district court did not abuse its discretion in declining to grant Freudensprung additional time within which to pursue formal discovery.

## CONCLUSION

For the foregoing reasons, we find that the district court did not err in compelling arbitration of Freudensprung's Jones Act and U.S. general maritime claims. We further find that the district court did not err in dismissing WWAI from the instant lawsuit for lack of personal jurisdiction, nor did the district court abuse its discretion in declining to permit Freudensprung additional time within which to conduct further jurisdictional discovery. The district court's judgment compelling

28

arbitration and staying litigation and its order dismissing WWAI for lack of personal jurisdiction are therefore AFFIRMED.

AFFIRMED.