# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 5, 2012

No. 11-20400
Summary Calendar

Lyle W. Cayce
Clerk

S & T OIL EQUIPMENT & MACHINERY, LTD.; VALERIAN SIMIRICA

Plaintiffs - Appellants

v.

JURIDICA INVESTMENTS LIMITED; JURIDICA CAPITAL
MANAGEMENT LTD.; JURIDICA CAPITAL MANAGEMENT (US) INC.

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
No. 4:11-cv-00542

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In February 2011, S&T Oil Equipment & Machinery, Ltd. and Valerian Simirica (collectively, "S&T") filed suit against Juridica Investments Limited, Juridica Capital Management Ltd., and Juridica Capital Management (US) Inc. The district court subsequently dismissed S&T's complaint in favor of arbitration. S&T now appeals the dismissal of its suit and the denial of a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20400

temporary restraining order. We affirm the dismissal of S&T's suit and dismiss its appeal of the denial of a temporary restraining order.

## I.

Juridica Investments Ltd. ("JIL") provides litigation financing to businesses involved in expensive commercial legal disputes. In May 2008, S&T Oil Equipment & Machinery, Ltd. entered into a contract ("Investment Agreement") with JIL. Pursuant to the contract, JIL agreed to fund part of the legal fees and costs of an arbitration before the International Center for the Settlement of Investment Disputes ("ICSID"). This arbitration was brought by S&T against the Romanian government, and arose from commercial activity in Romania (the "Romanian Arbitration").

In relevant part, the Investment Agreement provides:

[With exceptions not pertinent to this case], all actions, disputes, claims and controversies under common law, statutory law or in equity of any type or nature whatsoever, whether arising before or after the date of this Agreement, and whether directly or indirectly relating to (a) this Agreement and/or any amendments and addenda hereto, or the breach, invalidity or termination hereof; (b) any previous or subsequent agreement between [JIL] and [S&T]; (c) any act committed by [JIL] or by any parent company, subsidiary or affiliated company of [JIL] (the "[JIL] Companies"), or by any employee, agent, officer or director of a[] [JIL] Company whether or not arising within the scope and course of employment or other contractual representation of the [JIL] Companies . . . (d) any act committed by [S&T] or by any parent company, subsidiary or affiliated company of S&T. . . (e) any other relationship, transaction or dealing between [JIL] and [S&T] (collectively the "Disputes"), will be subject to and resolved by binding arbitration.

The Investment Agreement also states that "[a]ll arbitration will be conducted in accordance with the Arbitration Rules . . . of The London Court of International Arbitration," and that the "seat and situs of the arbitration and of all oral arbitration hearings will be in St. Peter Port, Guernsey, Channel

No. 11-20400

Islands." Notably, the Investment Agreement also states that it was executed in Guernsey and would "be performed by [JIL] exclusively and wholly in and from Guernsey."

JIL initiated arbitration proceedings against S&T on December 22, 2010. On February 14, 2011, S&T not only filed a sealed complaint in federal district court, but also an "Ex Parte Emergency Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction" which sought to enjoin the arbitration JIL had initiated against it. Later that same month, JIL filed a motion to dismiss in favor of arbitration.

In March 2011, the district court denied S&T's application for a temporary restraining order. The following month, the district court, after construing JIL's motion to dismiss as a motion to compel arbitration, dismissed S&T's complaint in favor of arbitration in Guernsey. This appeal ensued.

## II.

On appeal, S&T challenges both the dismissal of its complaint and the denial of its request for a temporary restraining order. We will limit our review to considering the district court's judgment compelling arbitration.

S&T argues that the district court erred in granting the motion to compel arbitration because the "arbitration provision in the Investment [A]greement violates Article 2 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the 'Convention')." We review a district court's grant of a motion to compel arbitration de novo. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). The district court's factual findings are reviewed for clear error. *Cal. Fina Grp., Inc. v. Herrin*, 379 F.3d 311, 315 (5th Cir. 2004).

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 340 (5th Cir. 2004) (citations omitted). "Accordingly, a court should compel arbitration if (1) there is a written

agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (internal quotation marks and citations omitted).

The parties dispute whether the fourth *Freudensprung* factor is satisfied in this case. In considering this fourth factor, courts must ask the following: Is a party to the agreement not an American citizen or does the commercial relationship have some reasonable relation with one or more foreign states? *Id.* (internal quotation marks and citations omitted). If either question is answered in the affirmative, then the fourth *Freudensprung* factor is satisfied.

In its brief, S&T argues that because JIL is an American citizen, the fourth *Freudensprung* factor is not met. For purposes of the Convention, "a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202. Neither party contends that JIL is incorporated in the United States. We are therefore faced with deciding where JIL has its principal place of business.

The Convention itself does not define what "principal place of business" means. The parties also do not point to any binding case law interpreting this phrase as it appears in the Convention. They do, however, draw a link between this language and the text of the federal diversity jurisdiction statute which also uses the "principal place of business" language.[1] In *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010), the Supreme Court concluded that, as used at 28 U.S.C. § 1332(c)(1), "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's

---

[1] In relevant part, the federal diversity jurisdiction statute provides: "For the purposes of this section and section 1441 of this title--(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

activities." In doing so, the Supreme Court adopted the "nerve center" approach that had been used by various courts of appeals. *Id.*

To answer the question regarding JIL's principal place of business, we would have to consider whether the nerve center approach that applies for Section 1332 purposes can also be used to interpret similar phrasing in the Convention. On the facts before us, we need not provide an answer to this query.

Although it is not absolutely clear where JIL has its principal place of business, it is evident that the commercial relationship between S&T and JIL has some reasonable relation with one or more foreign states. Even if JIL's principal place of business is in the United States, the Investment Agreement's arbitral clause can still be enforceable under the Convention if the legal relationship between JIL and S&T involved "property abroad, envisages performance or enforcement abroad, or has some other reasonable relation with on or more foreign states." 9 U.S.C. § 202. As we stated in *Freudensprung*, this reasonable relation with a foreign state must be "independent of the arbitral clause itself." 379 F.3d at 341 (citing *Lander Co., Inc. v. MMP Invs., Inc.*, 107 F.3d 476, 482 (7th Cir. 1997); *Jones v. Sea Tow Servs. Freeport NY Inc.*, 30 F.3d 360 (2d Cir. 1994)).

Here, it is evident that the legal relationship between JIL and S&T envisaged performance abroad. The Investment Agreement specifically states that it was executed in Guernsey and would be performed by JIL "exclusively and wholly in and from Guernsey." Indeed, pursuant to the terms of the Investment Agreement, JIL performed part of the agreement abroad when it wired funds from Guernsey to cover some of the legal fees and costs of the Romanian Arbitration. Not only was performance envisaged abroad, but the legal relationship between JIL and S&T also involves foreign property. Specifically, the Investment Agreement between the two parties states that S&T

No. 11-20400

was to provide its interest in a Romanian joint stock company as collateral to JIL.

Given these facts, it is evident that the commercial relationship between S&T and JIL has some reasonable relation with one or more foreign states that is independent of the arbitral clause itself. As such, the fourth *Freudensprung* factor is satisfied in this case. The district court therefore did not err in compelling arbitration.

## III.

For these reasons, we AFFIRM the district court's judgment compelling arbitration. We DISMISS S&T's appeal of the denial of its application for a temporary restraining order for lack of appellate jurisdiction. *See Matter of Lieb*, 915 F.2d 180, 183 (5th Cir. 1990) ("This court has long held that the denial of an application for a temporary restraining order is not appealable.").