# United States Court of Appeals
# for the Fifth Circuit

————————

No. 23-30171

————————

United States Court of Appeals
Fifth Circuit

**FILED**

March 4, 2024

Lyle W. Cayce
Clerk

Bufkin Enterprises, L.L.C.,

*Plaintiff—Appellee*,

*versus*

Indian Harbor Insurance Company; QBE Specialty
Insurance Company; Steadfast Insurance Company;
General Security Indemnity Company of Arizona;
United Specialty Insurance Company; Lexington
Insurance Company; Safety Specialty Insurance
Company; Old Republic Union Insurance Company,

*Defendants—Appellants*.

————————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-4017

————————————————————————

Before Willett, Wilson, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

In a suit arising from an insurance dispute, the district court abused its discretion by denying a group of domestic insurance companies' motion

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

to compel arbitration and stay the ongoing litigation. We therefore reverse and remand with instructions to grant the motion. We deny as moot the insured's motion to certify the question of whether Louisiana Revised Statutes § 22:868 prohibits enforcement of arbitration clauses in insurance contracts for surplus lines insurers.

## I.

In May 2020, Bufkin Enterprises, L.L.C. purchased surplus lines insurance coverage issued by ten insurers—eight domestic (U.S.-based) and two foreign (internationally-based)—to insure Bufkin's property in Louisiana.[1] The policy's declaration page lists individual policy numbers assigned to each of the ten insurers. The policy's contract allocation endorsement also states that "this contract shall be constructed as a separate contract between [Bufkin] and each of the [insurers]."

Notably, the policy includes an arbitration provision:

All matters in difference between [Bufkin] and the [insurers] . . . in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal[.]

---

[1] The domestic insurers, appellants here, are Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; Safety Specialty Insurance Company; and Old Republic Union Insurance Company. The foreign insurers are Certain Underwriters at Lloyd's London and HDI Global Specialty SE. The parties disagree whether the policy amounts to a single, all-encompassing agreement between the domestic and foreign insurers and Bufkin, or discrete agreements between each insurer and Bufkin. As detailed herein, we need not definitively settle this disagreement, but we refer to a singular policy in this opinion to simplify the discussion. The policy provision at issue, the arbitration clause, is identical across the agreement(s).

No. 23-30171

The provision states that any "[a]rbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York[.]" It further provides that the Arbitration Tribunal's decision "shall be binding" and enforceable "in a court of competent jurisdiction[.]"

In August 2020, Hurricane Laura hit Calcasieu Parish, damaging an apartment complex Bufkin owned in Lake Charles, Louisiana. Bufkin thereafter reported the loss to the insurers collectively. In its proof of loss correspondence, Bufkin did not differentiate between coverage obligations owed, or actions undertaken, by the domestic and foreign insurers. Instead, Bufkin's proof of loss stated that Bufkin "entered into this contract of insurance with the reasonable expectation that the [i]nsurers would abide by the terms of their policy and pay losses without delay." And further, that "[t]he [i]nsurers were paid to cover" Bufkin's properties. Despite the insurers' issuing "an advance payment of $100,000.00," Bufkin's proof of loss accused "[t]he [i]nsurers"—as a group—of delay, withholding payment due under the policy, and causing interruptions to Bufkin's business.

Unable to secure resolution of its claim, Bufkin filed this lawsuit in Louisiana state court for declaratory judgment, breach of contract, and breach of the duty of good faith and fair dealing. Initially, Bufkin sued only the domestic insurers. However, Bufkin filed an amended petition that named the foreign insurers as defendants. This amended petition was expressly filed for the purpose of then dismissing the foreign insurers "with prejudice[,] foregoing [sic] any rights against them[.]" It alleged that the foreign insurers were culpable of the very same conduct Bufkin had originally imputed to the domestic insurers. To illustrate, Bufkin's original petition alleged that "[the domestic insurers] breached the terms of the policy . . . by failing to pay for all benefits due to [Bufkin]." The amended petition added the foreign insurers as defendants but insisted that "[a]ll other allegations remain the same," such that Bufkin alleged that *all* the insurers engaged in

3

the same conduct. Consistent with its amended petition, Bufkin contemporaneously filed a separate motion for dismissal with prejudice of the foreign insurers, which the state court granted.

The domestic insurers then removed the case to the Western District of Louisiana. Once in federal court, the domestic insurers moved to compel arbitration under the Federal Arbitration Act (FAA) and the Convention on the Recognition and Enforcement of Arbitral Awards of June 10, 1958 (the Convention) and moved to stay the court proceedings. The district court denied the motion, reasoning that the Convention did not apply (1) because the domestic insurers were not parties to an arbitration agreement with a foreign-citizen party, given that each domestic insurer "[had] a separate contract with the insured"; and (2) equitable estoppel could not be a basis to invoke the Convention because Bufkin's claims were asserted only against the domestic insurers after the foreign insurers had been dismissed with prejudice. Additionally, the district court concluded that the FAA did not compel arbitration because Louisiana Revised Statutes § 22:868(A)(2)[2]

_____

[2] La. Rev. Stat. § 22:868 states, in relevant part:

A.      No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . .

(2)      Depriving the courts of this state of the jurisdiction or venue of action against the insurer.

. . . .

D.      The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

No. 23-30171

"reverse-preempted" the FAA under the McCarran-Ferguson Act, 15 U.S.C. § 1012(b).[3]  The domestic insurers appealed.

## II.

We review *de novo* the denial of a motion to compel arbitration and stay proceedings pending arbitration.  *Noble Cap. Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022) (citation omitted).  "We review for abuse of discretion a district court's determination of whether equitable estoppel may be invoked to compel arbitration."  *Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, L.L.C.*, 782 F.3d 186, 196 (5th Cir. 2015) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 360 (5th Cir. 2003)).  "To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous."  *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

## III.

The parties spar over several issues, including:  (1) whether the Convention applies to compel arbitration—and underlying that question, whether Bufkin had a series of discrete contracts with each insurer, as the district court concluded, or had one overarching policy agreement to which all the insurers were parties; (2) whether the district court abused its discretion by failing to apply equitable estoppel to compel arbitration, even assuming the insurers' contracts with Bufkin were separate; and (3) whether the district court erred in holding that Louisiana Revised Statutes § 22:868 overrode the arbitration agreements in the surplus lines insurance policies at

---

[3] The McCarran-Ferguson Act provides that federal statutes not specifically related to "the business of insurance" cannot preempt state statutes enacted "for the purpose of regulating the business of insurance."

issue via the McCarran-Ferguson Act. Because it is dispositive, we focus on the domestic insurers' argument that the district court abused its discretion by failing to apply equitable estoppel to compel arbitration under the Convention. The domestic insurers assure that this is so even if the district court correctly determined that the insurers' contracts with Bufkin—domestic and foreign—are separate contracts. We agree.

The Convention is an international treaty that provides citizens of signatory countries the right to enforce arbitration agreements. Its purpose is "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The FAA codifies the Convention, providing that it "shall be enforced in United States courts in accordance with [the FAA's terms]." 9 U.S.C. § 201.

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citation omitted). "[A] court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* (citation and internal quotation marks omitted). Once these factors are met, a district court must order arbitration "unless it finds that the [arbitration] agreement is null and void, inoperative or incapable of being performed." *Id.* (citation omitted). If we were to conclude that there was one overarching policy agreement to which all the insurers were parties, then the above factors would plainly be met. There is a written arbitration agreement to arbitrate in New York, which is located in a

Convention signatory nation, the agreement arises out of a commercial legal relationship, and some of the insurer-parties are not American citizens. *Id.* On the other hand, if we were to conclude that there were ten separate contracts, the contracts between Bufkin and the domestic insurers would not include a party that is not an American citizen, so those contracts would fail to meet the fourth factor. *Id.* In that instance, the only signatories to the arbitration agreements subject to the Convention would be Bufkin and the foreign insurers. However, the domestic insurers argue that even if we held there were ten separate contracts, arbitration must still be compelled under the doctrine of equitable estoppel.

As a general matter, Louisiana courts have applied equitable estoppel to enforce arbitration agreements. *See, e.g.*, *Pontchartrain Nat. Gas Sys. v. Tex. Brine Co.*, 2018-1249 (La. App. 1 Cir. 12/30/20), 317 So. 3d 715, 743–45 (citing and applying *Grigson*). Numerous federal district courts applying Louisiana law have likewise held that equitable estoppel is appropriate to compel arbitration under the Convention. *See, e.g.*, *Thumbs Up Race Six, LLC v. Indep. Specialty Ins. Co.*, No. 22-2671, 2023 WL 4235565, at *3 (E.D. La. June 28, 2023) (collecting cases). "The linchpin for equitable estoppel is equity—fairness." *Grigson*, 210 F.3d at 528; *Sturdy Built Homes, L.L.C v. Carl E. Woodward L.L.C.*, 11-0881 (La. App. 4 Cir. 12/14/11), 82 So. 3d 473, 478 (quoting same). And this court has held that equitable estoppel could, in either of two scenarios, allow a *non-signatory* to a contract with an arbitration clause to compel arbitration with a signatory. *Grigson*, 210 F.3d at 527–28. The first scenario is when a signatory to an agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory. *Id.* at 527. The second is when a signatory to a contract containing an arbitration clause raises allegations of substantially "interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Pontchartrain*

No. 23-30171

*Nat. Gas Sys.*, 317 So. 3d at 743 (citing *Grigson*, 210 F.3d at 527). If we presume there are ten separate contracts, the signatories to the arbitration agreements subject to the Convention are Bufkin and the foreign insurers. The domestic insurers are non-signatories. Thus, we focus on the second scenario.[4]

Two cases are especially instructive in determining whether a signatory has alleged "interdependent and concerted misconduct" under *Grigson*. The first is *Pontchartrain Natural Gas Systems*. There, the state court, applying *Grigson*, concluded that "after a thorough review of the record," the allegations of tortious conduct alleged against multiple parties— "although . . . carefully pl[ed]"—were not "wholly separate and apart from each other." 317 So. 3d at 744. Indeed, the court noted that it would be "nearly impossible to differentiate where one entity's fault would end and another would begin." *Id.* Thus, the state court held "that the allegations of misconduct . . . [we]re concerted and interdependent" such that all claims were "subject to consideration by the arbitration panel." *Id.*

The second case is *Kronlage Family Ltd. P'ship v. Indep. Specialty Ins. Co.*, 651 F. Supp. 3d 832, 841–42 (E.D. La. 2023), where the district court applied equitable estoppel to compel arbitration under the Convention after the plaintiff failed to differentiate between conduct of foreign and domestic insurers. Crucial to the *Kronlage* court's conclusion was that the petition "contain[ed] repeated allegations of substantially interdependent conduct" and also referred to the insurers "collectively and ma[de] allegations against both[.]" *Id.* at 842. That court found it compelling that the petition alleged,

---

[4] While it is true that "equitable estoppel is much more readily applicable when the case presents both independent bases," *Grigson*, 210 F.3d at 527, this court has upheld a district court's application of equitable estoppel in the arbitration context under only the second prong as well. *E.g.*, *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006).

*inter alia*, that the defendants "collectively insured the policy" and "received [p]laintiff's insurance claim." *Id.*

Here, the domestic insurers maintain that Bufkin satisfies *Grigson*, warranting arbitration under the Convention through equitable estoppel, because "Bufkin has raise[d] allegations of substantially interdependent and concerted misconduct by both the [d]omestic [i]nsurers and the [f]oreign [i]nsurers," i.e., non-signatories and signatories to the Convention-covered arbitration clauses. They point to Bufkin's amended petition, which expressly alleges that the foreign and domestic insurers collectively engaged in the exact same conduct. Further, Bufkin submitted its insurance claim to all the insurers, domestic and foreign alike, and Bufkin's formal proof of loss ascribed to the insurers, as a group, a common course of conduct.

Bufkin makes three primary points in response. First, the cases citing *Grigson*'s "intertwined" language "turn on a 'signatory' to a contract raising claims of intertwined misconduct, something not present in this case." Second, Bufkin contends that its "submission of loss" does not "change[] the contracts and separate coverage" of the insurers; in any event, Bufkin's naming of all the insurers on its submission was simply Bufkin's attempt to "follow[] instructions[.]" Finally, Bufkin argues that to allow the domestic insurers to arbitrate under the Convention is to "circumvent . . . Louisiana law through equitable estoppel."

On the record before us, Bufkin has alleged substantially interdependent and concerted conduct by the domestic and foreign insurers. Bufkin's amended petition does not differentiate between conduct of foreign and domestic insurers. *See Kronlage*, 651 F. Supp. 3d at 842. Nor does it allege facts to suggest that the insurers' conduct was "wholly separate and apart from each other." *Pontchartrain Nat. Gas Sys.*, 317 So. 3d at 743. Indeed, it alleges the opposite: Bufkin added the foreign insurers as

defendants but made clear that "[a]ll other allegations remain[ed] the same." Put differently, Bufkin's amended petition alleges that the foreign and domestic insurers collectively engaged in the same culpable conduct. Further, Bufkin's submission of its insurance claim to *all* the insurers—pursuant to "instructions" or not—shows that the insurers were collectively engaging in interdependent conduct in processing Bufkin's claim.

We also conclude that, as in *Thumbs Up Race Six* and *Kronlage*, equitable estoppel is appropriate to compel arbitration under the Convention. It is of no moment that Bufkin is no longer pursuing claims against the foreign insurers; *Grigson* does not require that. *Grigson* simply asks whether the signatory to the arbitration agreement (here, Bufkin) raises allegations of substantially interdependent and concerted misconduct by both a non-signatory (the domestic insurers) and one or more signatories to the contract (the foreign ones). *See Pontchartrain Nat. Gas Sys.*, 317 So. 3d at 743–45 (citing *Grigson*, 210 F.3d at 527). Bufkin has. As the master of its complaint, *see Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 715 (5th Cir. 2021), Bufkin named the foreign insurers as defendants and accused them of the same malfeasance as the domestic insurers. This, coupled with Bufkin's own conduct in submitting and negotiating its submission of loss, satisfies *Grigson*.

While Bufkin was certainly free to name and then dismiss the foreign insurers, the district court was not free to *disregard* them in considering the domestic insurers' motion to compel arbitration. Yet in focusing on Bufkin's dismissal of the foreign insurers, the district court neglected to consider the foreign insurers' part in the seamless coverage agreement struck by the parties, and Bufkin's interactions with the insurers. Honing in, that coverage arrangement included the arbitration clause that afforded the insurers—foreign and domestic—"predictability in resolving disputes dealing with the

substantial risks presented by a surplus lines insurance policy."[5] The district court failed to apply *Grigson*'s "interdependent and concerted misconduct" test. This was an abuse of discretion. *See Grigson*, 210 F.3d at 528 ("To constitute an abuse of discretion, the district court's decision must be either premised on an application of the law that is erroneous, or on an assessment of the evidence that is clearly erroneous."). The upshot is that indulging Bufkin's pleading-and-then-dismissing gamesmanship by denying arbitration turns on its head the axiom that "[t]he linchpin for equitable estoppel is equity—fairness." *Id.*

Further, and contrary to Bufkin's contention, this conclusion does not run "against Louisiana public policy." The Convention is an exception to Louisiana's general bar on policy terms that deprive its state courts of jurisdiction and venue in actions against insurers. *See* La. Rev. Stat. § 22:868. Indeed, this court has already held that § 22:868 does not reverse preempt the Convention because the McCarran-Ferguson Act does not apply to treaties. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's London*, 587 F.3d 714, 718 (5th Cir. 2009) (en banc). In other words, § 22:868 does not come into play. Instead, the arbitration agreement between the parties is subject to the Convention *through* equitable estoppel. There is no tension between this position and Louisiana law.

---

[5] The domestic insurers maintain that surplus lines insurance is "specialized coverage written by unlicensed, nonadmitted insurance companies to cover specific extraordinary items and uncommon or high risks that are generally not covered by traditional insurance companies under standard policies." In such a high-risk enterprise, arbitration under the Convention was a material benefit of the insurers' bargain with Bufkin.

## IV.

Before concluding, we turn to Bufkin's motion to certify to the Louisiana Supreme Court "[w]hether La. R.S. § 22:868 prohibits the enforcement of arbitration clauses in insurance contracts for surplus lines insurers." Having resolved this appeal on *Grigson* estoppel grounds, § 22:868's impact is not a live issue in this dispute. Thus, Bufkin's motion to certify is denied as unnecessary.

## V.

For the reasons set forth, we REVERSE the district court's denial of the domestic insurers' motion to compel arbitration and stay this litigation and REMAND with instructions to grant the motion. We also DENY AS MOOT Bufkin's motion to certify.