# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE
NEWS RELEASE #049

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **25th day of October, 2024** are as follows:

**BY Knoll, J.:**

2024-CQ-00449      *POLICE JURY OF CALCASIEU PARISH VS. INDIAN HARBOR INSURANCE CO., ET AL.*

CERTIFIED QUESTIONS ANSWERED. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.

No. 2024-CQ-00449

POLICE JURY OF CALCASIEU PARISH

VS.

INDIAN HARBOR INSURANCE CO., ET AL.

*On Certified Question from the United States District Court for the Western District of Louisiana Lake Charles Division*

**KNOLL, Justice *Pro Tempore*\***

The underlying lawsuit pertains to damage caused by Hurricanes Laura and Delta in 2020 to approximately 300 properties owned by Plaintiff, Police Jury of Calcasieu Parish ("Calcasieu"), a political subdivision of the State of Louisiana. Defendants, eight domestic insurers, seek to compel arbitration. The arbitration would take place in the state of New York before an arbitration tribunal comprised of insurance executives applying New York law to Calcasieu's approximately 300 property damage claims. The United States District Court for the Western District of Louisiana, Lake Charles Division, granted Calcasieu's motion to certify three critically important questions of Louisiana law that should be answered by the Louisiana Supreme Court.

We accepted certification to address the three certified questions pursuant to Louisiana Supreme Court Rule XII.[1] All three questions concern the validity of

---

\* Justice Jeannette Theriot Knoll, retired, appointed Justice *Pro Tempore*, sitting for the vacancy in Louisiana Supreme Court District 3.

[1] Louisiana Supreme Court Rule XII provides, in pertinent part:

> When it appears to […] any district court of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.

arbitration clauses in insurance policies issued to Calcasieu; specifically, surplus lines policies between domestic insurers and Louisiana political subdivisions.

The first question is whether the 2020 amendment[2] to La. R.S. 22:868(D) allowing forum or venue selection clauses in certain types of insurance contracts implicitly repealed La. R.S. 22:868(A)'s prohibition of arbitration clauses in all insurance contracts. As more fully discussed *infra.*, we answer this question in the negative.

The second question is whether La. R.S. 9:2778—which bars arbitration clauses in contracts with the state or other political subdivisions of the state—applies to all public contracts, including insurance contracts. We answer this question in the affirmative, as more fully discussed *infra*.

The third question is two-pronged. It asks, first, whether a domestic insurer may invoke the doctrine of equitable estoppel to enforce an arbitration clause contained in another insurer's policy, thereby circumventing the prohibition of arbitration clauses under La. R.S. 22:868(A)(2). Second, it asks whether estoppel can be applied to political subdivisions *without* satisfying the heightened standard adopted by this Court for its application to public bodies. We answer both prongs of this question in the negative, as more fully discussed *infra*.

## FACTS AND PROCEDURAL HISTORY

We decide certified questions on the facts presented by the Federal Court. *See Pickard v. Amazon.com, Inc.*, 23-01596 (La. 6/28/24), 387 So. 3d 515, 518. In its order, the Western District Court set forth the facts recited below:

> On August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana. The Hurricanes allegedly caused damage to Calcasieu's numerous properties. Calcasieu is a public body. During the relevant time period, a syndicate of insurers, through separate contracts, insured approximately 300 locations in Calcasieu Parish, with a named windstorm limit of $100,000,000 per occurrence (hereinafter referred

---

[2] 2020 Acts No. 307 § 1.

to as the "policy"). The policy provides that each insurer in the syndicate has its own separate contract with Calcasieu and each insurer is separately responsible, and never jointly responsible with any other insurer in the syndicate.

Calcasieu alleges that the insurers have underpaid its claims and made untimely payments, thus, they are liable for the unpaid claims and penalties pursuant to La. R.S. §§ 22:1892 and 22:1973.

On August 22, 2022, Calcasieu filed suit in state court, entitled *Police Jury of Calcasieu Parish v. Certain Underwriters at Lloyds London, et* al., Civ. Action 2:23-20, and on August 26, 2022, Calcasieu dismissed with prejudice the only two foreign insurers, Certain Underwriters at Lloyd's, London and HDI Global Specialty SE. These Defendants were never served, and the remaining Defendants were served on November 17, 2022.

*Police Jury of Calcasieu Par. v. Indian Harbor Ins. Co.*, 2:24-CV-00342, 2024 WL 1545135 at *1 (W.D. La. Apr. 9, 2024), *certified question accepted*, 24-00449 (La. 6/19/24), 386 So.3d 306.

In January 2023, the lawsuit was removed to the Western District Court.[3] Thereafter, Calcasieu filed a Motion to Remand, which was granted, and the matter was remanded to the Fourteenth Judicial District Court.

Defendants, all domestic insurers—Indian Harbor Insurance Company, Lexington Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company, General Security Indemnity Company of Arizona, Old Republic Union Insurance Company, and Safety Specialty Insurance Company (collectively, "Defendants")—filed a second Notice of Removal to remove the lawsuit to the Western District on March 6, 2024.[4] Additionally, Defendants filed a Motion to Compel Arbitration and Stay Proceedings. Defendants sought to compel arbitration by enforcing arbitration

---

[3] *See infra* note 3 and accompanying text.

[4] The Western District Court's Memorandum Order to Certify Question to this Court states the matter was re-removed to the Western District Court on January 6, 2023. The record, however, reflects the second Notice of Removal was filed on March 6, 2024, and granted by the Western District on March 11, 2024.

clauses found in two foreign insurers' policies with Calcasieu, which requires all claims associated with the policies to be submitted to arbitration proceedings in New York, where the arbitration tribunal shall apply New York law.

In its Notice of Removal, Defendants relied on the recent case *Bufkin Enter. v. Indian Harbor Ins. Co.*, 96 F.4th 726 (5th Cir. 2024), in which the United States Court of Appeal for the Fifth Circuit held an arbitration clause contained in a Louisiana insurance contract was enforceable under the rules of the Convention on the Recognition and Enforcement of Arbitral Awards of 1958 (the "Convention") via equitable estoppel. In its order to certify questions to this Court, the Western District noted that another recent case supported the re-removal of this matter, *Indian Harbor Ins. Co. v. Belmont Commons, L.L.C.*, 23-30246, 2024 WL 962376 (5th Cir. Mar. 6, 2024). In *Belmont Commons*, the court found an arbitration agreement within an insurance policy issued in Louisiana was enforceable, notwithstanding the Convention, equitable estoppel, or La. R.S. § 22:868. *See Belmont Commons*, 2024 WL 962376 at *4.

After the second removal of this matter, Calcasieu filed a Motion to Certify Question to this Court on March 28, 2024, urging *Bufkin* and *Belmont Commons* are inconsistent with this Court's 2019 ruling in *Creekstone Juban, L.L.C. v. XL Ins. Am., Inc.*, 18-0748 (La. 5/8/19), 282 So. 3d 1042.[5] Thereafter, on April 9, 2024, the Western District Court granted Calcasieu's motion and certified the following three questions to this Court:

(1) Whether the 2020 amendment adding Subsection D (Act No. 307 § 1 of 2020) to La. R.S. 22:868 to allow forum and venue selection clauses in limited circumstances implicitly repealed Subsection A's long-standing prohibition of arbitration clauses in all insurance policies in Louisiana?

(2) Whether La. R.S. 9:2778 applies to all contracts with political subdivisions of the State, including insurance contracts, and thereby

---

[5] In *Creekstone Juban*, we recognized a distinction between a forum selection clause and a clause that deprives Louisiana courts of jurisdiction, like an arbitration clause. *Id.*, 18-0748, p. 9, 282 So. 3d at 1049.

prohibits venue or arbitration outside of Louisiana or the application of foreign law in claims involving the State and its political subdivisions?

(3) If arbitration continues to be prohibited in all insurance policies delivered or issued for delivery in Louisiana, whether a domestic insurer may resort to equitable estoppel under state law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2); and related, whether estoppel can be applied to political subdivisions without satisfying the distinct and heightened standard otherwise required by the Louisiana Supreme Court for application of estoppel to public bodies?

*Police Jury of Calcasieu Par.*, 2024 WL 1545135 at *2. We accepted certification.[6]

## DISCUSSION

**Question 1***: Did Subsection D of La. R.S. 22:868 implicitly repeal Subsection A's prohibition of arbitration clauses?*

At the outset, we note this case involves the interpretation of La. R.S. 22:868, as amended in 2020. Generally, La. R.S. 22:868(A) prohibits the use of arbitration clauses in insurance policies. This prohibition is rooted in public policy, for compulsory arbitration clauses by operation deprive courts of jurisdiction over actions against insurers. *Courville v. Allied Professionals Ins. Co.*, 16-1354, p. 5 (La. App. 1 Cir. 4/12/17), 218 So.3d 144, 148. As such, we have historically held arbitration clauses within insurance policies are unenforceable. *See Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So.2d 1383, 1384 (La. 1982).

In 2020, the Legislature amended La. R.S. 22:868(A) and added Subsection D. This amendment does not demonstrate an express repeal of any existing provision of the statute. Accordingly, any repeal of Subsection A by Subsection D would have to be by implication. Generally, statutory repeals by implication are not favored. *U.S. v. Will*, 449 U.S. 200, 221, 101 S.Ct. 471, 484, 66 L.Ed.2d 392 (1980) (citations

---

[6] After we accepted the certified question, Defendants filed a "Motion to Dismiss Certified Questions as Improvidently Granted." Essentially, Defendants argued the matter was not appropriate for certification because issues of federal law remain to be resolved. We referred Defendants' motion to the merits of the certified question. Having considered the motion in the context of the merits of the certified question, we now deny Defendants' motion.

5

omitted). A repeal by implication will be found only where two acts are irreconcilably inconsistent or repugnant. *State v. Pilcher*, 21-01226, p. 5-6 (La. 10/21/22), 351 So. 3d 358, 361. Moreover, this Court will not find an implicit repeal when there exists any possible construction in which both provisions have full effect. *City of New Orleans v. Louisiana Assessors' Ret. & Relief Fund*, 05-2548, p. 17 (La. 10/1/07), 986 So. 2d 1, 15. A question of implicit repeal is one of legislative intent. *State v. Thread*, 203 La. 1026, 1031, 14 So. 2d 824, 825 (1943).

Legislation is the solemn expression of legislative will; as such, statutory interpretations are primarily the search for legislative intent. *Creekstone Juban*, 18-0748, p. 4, 282 So. 3d at 1046. The interpretation of any statute begins with the statute itself. *Id.* When the law in question is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written; no further interpretation in search of legislative intent is required. *Id.*; *See* La. R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."). Additionally, a statute must be interpreted and applied in a manner consistent with logic and the presumed fair purpose and intention of the Legislature in enacting it. *Creekstone Juban*, 18-0748, p. 4, 282 So. 3d at 1046. Finally, it is presumed that the Legislature (1) intends to achieve a consistent body of law, and (2) has enacted each statute with deliberation and full knowledge of all existing laws on the same subject. *Id.*; *City of Westlake v. Republic Fire & Casualty Ins. Co.*, 664 F.Supp. 3d 665, 673 (W.D. La. 2023).

With these well-established principles in mind, and as discussed herein, we find the addition of La. R.S. 22:868(D) did not implicitly repeal the prohibition of arbitration clauses set forth in Subsection A. Prior to the 2020 amendment of La. R.S. 22:868, in *Creekstone Juban*, this Court held an insurance policy's forum selection clause was valid because the provision, at that time, made no express

prohibition of forum or venue selection in Subsection A. *Id.* 18-0748, p. 9, 282 So. 3d at 1049. The forum selection clause at issue in *Creekstone Juban* stated:

**19. SERVICE OF SUIT AND CHOICE OF LAW**

In the event that any disagreement arises between the "insured" and the "Company" requiring judicial resolution the "insured" and the "Company" each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York. The "Insured" and the "Company" further agree to comply voluntarily with all the requirements necessary to give such court jurisdiction […]

The "Insured" and the "Company" further agree that New York law shall control the interpretation, application and meaning of this contract, whether in suit or otherwise.

*Id.* at p. 2.

At the time of the *Creekstone Juban* decision, La. R.S. 22:868(A) provided, in pertinent part:

A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:

(1) […]

(2) Depriving the courts of this state of the *jurisdiction of action* against the insurer

(emphasis added). In *Creekstone Juban*, we emphasized the distinction between the concepts of forum or venue and jurisdiction, declining to extend the definition of "jurisdiction" to include "venue" or "forum." *Id.*, 18-0748, p. 9, 282 So. 3d at 1049. Citing *Al Copeland Investments, LLC v. First Specialty Ins. Corp.*, 884 F.3d 540 (5th Cir. 2018), we concluded La. R.S. 22:868(A), prior to its 2020 amendment, permitted the use of a forum or venue selection clause in an insurance contract. *Id.* at p. 1.[7]

---

[7] The *Al Copeland* court explained:

A forum-selection clause is a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship. Section 22:868

In the wake of *Creekstone Juban*, in May 2020, the Legislature amended La. R.S. 22:868 in two notable ways. First, the language of Subsection A(2) was modified to read: "Depriving the courts of this state of the jurisdiction *or venue* of action against the insurer." (emphasis added). Second, Subsection D was added: "The provisions of Subsection A of this Section shall not prohibit *a forum or venue selection clause* in a policy form that is not subject to approval by the Department of Insurance." (emphasis added).

On its face, La. R.S. 22:868(D) provides for limited circumstances in which the use of a *forum or venue selection clause* is permissible in an insurance policy issued in Louisiana. Although we have previously characterized an arbitration clause as a type of alternative venue, we cannot simplify the definition of an arbitration clause to be synonymous with a forum or venue selection clause under La. R.S. 22:868(D).[8] We have consistently maintained that jurisdiction is a distinct concept from venue.[9] Now, we must draw a similar distinction between arbitration clauses and forum or venue selection clauses based on their primary functions.

Forum selection clauses primarily concern the location where parties may pursue litigation. Indeed, the U.S. Supreme Court has held a forum selection clause does not impact jurisdiction.[10] In contrast, arbitration clauses primarily concern the method of dispute resolution, depriving any court of jurisdiction over an action.

---

says nothing about venue. As the district court recognized, venue and jurisdiction are "separate and distinct." We, too, will not stretch the definition of jurisdiction to include venue—a feat with no legal footing.

[8] *See Hodges v. Reasonover*, 2012-0043 (La. 7/2/12), 103 So. 3d 1069, 1076 ("[An arbitration clause] simply provides for an alternative venue for the resolution of disputes."). Significantly, this case concerned an attorney-client retainer agreement, not a contract of insurance.

[9] *See Turner v. Leslie*, 96-2288 (La. 12/6/96), 684 So. 2d 395, 396. This matter involved a defendant's exception of improper venue in a successions proceeding. *See also Creekstone Juban*, 18-0748, p. 9, 282 So. 3d at 1049.

[10] *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S. Ct. 1907, 1914, 32 L. Ed. 2d 513 (1972) ("[n]o one seriously contends in this case that the forum selection clause 'ousted' the District Court of jurisdiction over Zapata's action.").

In *Creekstone Juban*, we declined to extend the definition of "jurisdiction" to include "venue" or "forum." In the instant matter, we similarly decline to extend the definition of "venue" or "forum" to include "jurisdiction" for purposes of La. R.S. 22:868(D) to allow arbitration clauses. An arbitration clause cannot be categorized so broadly as a forum or venue selection clause when it operates to fully deprive courts of jurisdiction of action.

We find no irreconcilable conflict between Subsections A and D, thus there is no repeal by implication. Rather, the plain language of Subsection D creates a limited exception in which a forum or venue selection clause is permitted in certain types of insurance contracts; the language of the statute does not plainly indicate arbitration clauses are also permitted. The Legislature's 2020 amendment to La. R.S. 22:868 in response to *Creekstone Juban* clearly maintained Louisiana's long-standing prohibition of clauses depriving courts of this state of jurisdiction of actions against insurers, like arbitration clauses.[11]

Simultaneously, we find the Legislature's enactment of Subsection D provided merely a carve-out, allowing a forum or venue selection clause in limited circumstances, i.e., policies not subject to approval by the Department of Insurance. The language of the statute as amended is clear and unambiguous. We cannot conclude the Legislature conflated the terms "jurisdiction" and "forum" or "venue" in La. R.S. 22:868(D) to permit the use of arbitration clauses in insurance policies subject to the approval of the Department of Insurance.

---

[11] Compulsory arbitration provisions in insurance contracts are "prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution." *Courville v. Allied Professionals Ins. Co.*, 16-1354, p. 5 (La. App. 1 Cir. 4/12/17), 218 So.3d 144, 148 (citations omitted); *See also Creekstone Juban*, 18-0748, 282 So. 3d at 1052 (Weimer, *concurring*) ("that the arbitration agreement has the effect of depriving courts of this state of jurisdiction of action against the insurer admits no argument") (citations omitted). Thus, as this Court made clear, an arbitration clause in an insurance policy is unenforceable. *See Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So.2d 1383, 1384 (La. 1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable").

Thus, we find La. R.S. 22:868(D) neither expressly nor implicitly repealed Subsection A's prohibition of arbitration clauses in all insurance contracts issued in Louisiana, as the enforcement of such clauses deprives Louisiana courts of jurisdiction. Accordingly, we answer the first certified question in the negative.

***Question 2****: Does La. R.S. 9:2778 apply to all contracts with political subdivisions of the State?*

In the second certified question, we are asked:

> Whether La. R.S. 9:2778 applies to all contracts with political subdivisions of the State, including insurance contracts, and thereby prohibits venue or arbitration outside of Louisiana or the application of foreign law in claims involving the State and its political subdivisions?

The answer to this certified question rests on whether an insurance policy with a political subdivision is a "public contract" within the meaning of La. R.S. 9:2778. For the following reasons, we answer in the affirmative, finding La. R.S. 9:2778 applies to *all* contracts with political subdivisions of the State – including insurance contracts.

La. R.S. 9:2778, in pertinent part, states:

A. The [L]egislature finds that with respect to public contracts involving the state or a political subdivision of the state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and *against the public policy of this state*.

B. The [L]egislature hereby declares null, void, unenforceable, and *against public policy*, any provision in a contract, subcontract, or purchase order, as described in Subsection A, which either:

> (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state.

> (2) Requires interpretation of the agreement according to the laws of another jurisdiction.

C. The provisions of this Section shall apply to public contracts, as described in this Section, entered into on or after June 30, 1992.

(emphasis added).

Although La. R.S. 9:2778 was enacted in 1992, this Court has yet to address or interpret it. Further, the limited lower state court decisions are inconsistent and do not concern insurance contracts.[12] In answering the second certified question, we clearly address this issue to also provide guidance and consistency to our lower courts.

It is undisputed that Calcasieu is a political subdivision of this state. Importantly, it is the governing body of Calcasieu Parish. Also, it is undisputed the Defendants contracted with Calcasieu for Defendants to provide insurance coverage for approximately 300 properties owned by Calcasieu for the benefit of the public. There are no private actors present in the transactions between Calcasieu and the Defendants. The Defendants' insurance policies clearly covered public properties owned by Calcasieu, purchased with public funds—taxpayer dollars. As such, we easily find insurance contracts with political subdivisions, like the policies at issue, are public contracts within the meaning of La. R.S. 9:2778.

We note with significance the Western District applied this statute in similar circumstances in two recent cases, both of which arose after the 2020 amendment to La. R.S. 22:868—*Chennault Int'l Airport Auth. v. Starr Surplus Lines Ins. Co.*, 2:22-CV-02735, 2023 WL 2637450 (W.D. La. Mar. 24, 2023) and *Westlake*, *supra*. In both matters, the court employed Louisiana law, namely La. R.S. 9:2778, to find forum selection clauses of Louisiana insurance policies with political subdivisions unenforceable. *See Chennault*, 23 WL 2637450, at *4; *Westlake*, 664 F.Supp. 3d at 674. We quote, with approval, the *Westlake* court:

> The policy at issue was purchased with public money and covers public property; there is thus every basis for considering it a "public contract." Additionally, the statute falls under the title regulating contracts as a whole.

\*\*\*

---

[12] *See Historical Arts and Casting, Inc. v. Favalora Constructors, Inc.*, 03-892 (La. App. 5 Cir. 11/25/03), 862 So. 2d 221); La. Atty. Gen. Op. No. 96-127 (La. A.G.), 1996 WL 210828 (Mar. 26, 1996); La. Atty. Gen. Op. No. 03-0046 (La. A.G.), 2003 WL 295602 (Jan. 30, 2003).

11

> The statute under its plain terms or even through the interpretation of any ambiguity indicates the state's strong public policy against both forum selection clauses and choice of law clauses in the policy at issue, requiring a political subdivision of the state to litigate its insurance claim in New York and under New York law. This is clearly a valid area of state concern; it does not relate to private actors and their right to contract but to clauses in public contracts that would potentially subject a state actor to litigation under the laws of another state in an out-of-state forum. Accordingly, it is unenforceable. . . .

*Id.*, 664 F.Supp. 3d at 673-74, *see also*, *Chennault*, 2023 WL 2637450, at \*4. We find the *Westlake* court's rationale persuasive and we concur with its decision.[13]

As previously stated, when a law is clear and unambiguous, and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the Legislature's intent. *Creekstone Juban*, 18-0748, p. 4, 282 So. 3d at 1046. Statutes enacted for public policy purposes are to be liberally construed in favor of their objective; any exception to their application must be interpreted strictly. *Westlake*, 664 F.Supp. 3d at 672, citing *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La. 05/18/87).

It is well-settled that an insurance policy is a type of contract. *See Broadmoor Anderson v. Nat'l Union Fire Ins. Co. of Louisiana*, 40,096 (La. App. 2 Cir. 9/28/05), 912 So. 2d 400, 404 ("[A]n insurance contract is an aleatory, nominate contract subject to the general rules of contract interpretation set forth in our civil code."). An insurance policy issued to a public entity or political subdivision, too, is classified as a contract. This raises the questions of whether an insurance policy

---

[13] The Louisiana Supreme Court is bound by the decisions of neither federal appellate courts nor federal district courts. *Rousse v. United Tugs, Inc.*, 17-0585, p. 6 (La. App. 4 Cir. 12/20/17), 234 So. 3d 1179, 1184. In matters involving federal law, state courts are bound only by United States Supreme Court decisions; federal appellate court decisions are persuasive only. *Shell Oil Co. v. Sec'y, Revenue & Taxation*, 96-0929, p. 9, n. 11 (La. 11/25/96), 683 So. 2d 1204, 1210. Federal appellate decisions will not be followed in the face of positive jurisprudence of this Court to the contrary. *Rousse*, 17-0585, p. 6, 234 So. 3d at 1184. Nonetheless, as federal appellate decisions are persuasive authority, we review those opinions carefully to determine whether they offer further guidance for our own analysis. *Id.* Likewise, while federal district court decisions are not binding on this Court, we may find their rationale persuasive and concur with their decisions. *Id.*

issued in Louisiana to a political subdivision is a "public contract" under La. R.S. 9:2778, and whether any provision contained therein requiring a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state is null.

Forum selection clauses are generally enforceable and do not *per se* violate Louisiana public policy. *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc., of La.*, 13-1977, p. 11 (La. 7/1/14), 148 So. 3d 871, 878. However, when the legislature enacts a specific statute expressly prohibiting forum selection clauses, we recognize such prohibition as an expression of strong public policy. *Id.* at p. 17.

We agree with *Chennault* and *Westlake* that the plain language of La. R.S. 9:2778 clearly evinces strong public policy against forum selection and arbitration clauses in public contracts. We decline to make an exception for insurance contracts with the state or its political subdivisions. Doing so would be a clear violation of La. R.S. 9:2778's declaration that these clauses are "inequitable and against the public policy of this state." The statute is not limited to any specific type of contract; its scope being "any provision in a contract, subcontract, or purchase order" involving the state or its political subdivisions. La. R.S. 9:2778(B).

Further, as the Western District noted in *Westlake*, the Legislature failed not only to cross-reference La. R.S. 9:2778 when it enacted La. R.S. 22:868(D), but also failed to indicate that La. R.S. 22:868(D) superseded all other statutes on the subject. *See Westlake* 664 F.Supp. 3d at 673. Moreover, when the Legislature amended La. R.S. 22:868 in 2020, it did not concomitantly amend La. R.S. 9:2778 to add a similar exemption for insurance contracts that do not require approval by the Department of Insurance, like surplus lines policies.

Based on the foregoing, and in the absence of compelling evidence to the contrary, we hold La. R.S. 9:2778 applies to insurance contracts with political subdivisions of Louisiana. Liberally interpreting La. R.S. 9:2778's objective, we find no justification for excluding these insurance contracts from our Legislature's

strong public policy against forum selection clauses. Thus, we answer this certified question in the affirmative; insurance policies with political subdivisions of this state are public contracts pursuant to La. R.S. 9:2778, and are, accordingly, subject to the prohibitory provisions therein.

**Question 3**: *Equitable Estoppel*

In the third certified question, we are asked:

> If arbitration continues to be prohibited in all insurance policies delivered or issued for delivery in Louisiana, whether a domestic insurer may resort to equitable estoppel under state law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2); and related, whether estoppel can be applied to political subdivisions without satisfying the distinct and heightened standard otherwise required by the Louisiana Supreme Court for application of estoppel to public bodies?

Our answer to the first certified question informs the answer to the third certified question. Specifically, the plain language demonstrating La. R.S. 22:868(A)(2)'s "anti-arbitration" nature,[14] that is, its prohibition of clauses depriving Louisiana courts of jurisdiction of action, was unaffected by the 2020 enaction of Subsection D.

Moreover, we find the U.S. Fifth Circuit Court of Appeals correctly applied Louisiana law to reach the same finding in *S. K. A. V., L.L.C. v. Indep. Specialty Ins. Co.*, 103 F.4th 1121, 1124 (5th Cir. 2024). There, the court observed that *Creekstone Juban* left no "doubt upon the general understanding that (A)(2) continued to operate as an anti-arbitration provision" post-amendment. Thus, in its current form, La. R.S. 22:868 prohibits arbitration clauses in all Louisiana-issued insurance contracts.

With this principle established, we proceed to answer both prongs of this certified question which concern the availability and application of the doctrine of equitable estoppel under Louisiana law.

---

[14] *See Creekstone Juban*, 18-0748, 282 So. 3d at 1052 (Weimer, *concurring*).

Equitable estoppel is a "jurisprudential [common law] doctrine involving the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied on such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct." *MB Industries, LLC v. CAN Ins. Co.*, 11-0303, p. 9 (La. 10/25/11), 74 So. 3d 1173, 1180 (citations omitted). Further, we recognize that equitable estoppel "applies only where a party has made false or misleading representations of fact and the other party justifiably relied on the representation." *Id.,* p.10, 74 So. 3d at 1180.

Estoppel is not favored in our state's Civil Law System; rather, it is a doctrine of last resort. *Saloom v. Dep't of Transp. & Dev.*, 22-00596, p. 6 (La. 12/9/22), 354 So. 3d 1179, 1183. Equitable considerations and estoppel cannot prevail when in conflict with our state's positive written law. *Id.* Additionally, if legislation provides a solution to a particular situation, then "no jurisprudence, usage, equity, or doctrine can prevail over the legislation." *Id.* Further, there is no place in Louisiana law for a common law doctrine addressing subjects of existing positive law of the Civil Code. *Leisure Recreation & Entm't, Inc. v. First Guar. Bank*, 21-00838, p. 14 (La. 3/25/22), 339 So. 3d 508, 518, *reh'g denied*, 21-00838 (La. 5/10/22), 347 So.3d 886.

The first prong questions whether a domestic insurer may use equitable estoppel under Louisiana law to enforce arbitration via a foreign insurer's policy. For the following reasons, we answer this part of the question in the negative.

In short, equitable estoppel is not available under these circumstances because it conflicts with the positive law of La. R.S. 22:868, which prohibits the use of arbitration clauses in Louisiana-issued insurance policies. As such, domestic insurers may not employ this common law doctrine to compel arbitration through the clause of another insurer's policies, as it clearly contravenes La. R.S. 22:868(A)(2). A contrary finding would (1) violate Louisiana's positive law prohibiting arbitration in Louisiana-issued insurance policies; and (2) invite

15

domestic insurers' misuse a doctrine of "last resort" to ceaselessly rely on insurance policies of foreign insurers to compel arbitration.

With all due respect, we disagree with the Federal Court's recent *per curiam* in *Bufkin Enterprises, L.L.C. v. Indian Harbor Ins. Co.* 96 F.4th 726 (5th Cir. 2024). There, the Fifth Circuit, citing *Grigson*,[15] determined that non-signatory domestic insurers may use the doctrine of equitable estoppel to compel arbitration under the Convention through the policies of foreign insurers. *Id.* at 732. We find this conclusion flawed and not supported by Louisiana law. Notably, domestic insurers do not fall under the rules of the Convention. The *Bufkin* court did correctly recognize that the Convention is an international treaty enacted to encourage "the recognition and enforcement of commercial arbitration agreements in *international* contracts." *Id.* at 729 (emphasis added). The *Bufkin* court failed to acknowledge that Louisiana has positive law on this issue. Indeed, La. R.S. 22:868 precludes domestic insurers' use of estoppel to compel arbitration. Defendants' reliance on *Bufkin* is misplaced.

Thus, we find a domestic insurer may *not* resort to equitable estoppel under Louisiana law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2).

Finally, the second prong of the third certified question is whether estoppel can be applied to political subdivisions "without satisfying the distinct and heightened standard otherwise required by the Louisiana Supreme Court for application of estoppel to public bodies."[16] This issue is rendered moot by our

---

[15] *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000) (highlighting two scenarios allowing a non-signatory to compel arbitration through the clause of a signatory's contract under the Convention).

[16] This Court has recognized a heightened, more burdensome standard when applying equitable estoppel in cases involving a government agency that requires: (1) unequivocal advice from an unusually authoritative source, (2) reasonable reliance on that advice by an individual, (3) extreme harm resulting from that reliance, and (4) gross injustice to the individual in the absence of judicial estoppel. *Luther v. IOM Co. LLC*, 2013-0353, p. 11 (La. 10/15/13), 130 So. 3d 817, 825.

answer to the first part of this certified question. As we have already determined, the doctrine of equitable estoppel is inapplicable where La. R.S. 22:868 provides positive law prohibiting compulsive arbitration clauses in insurance policies.

For the foregoing reasons, we answer the third certified question in the negative: Since "arbitration continues to be prohibited in all insurance policies delivered or issued for delivery in Louisiana," a domestic insurer *may not* resort to equitable estoppel under state law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2).

## CONCLUSION

This Court's opinion is not a discussion or comment on the merits of this case. Our discussions in this opinion are interpretations of Louisiana law in strict compliance limited to the certified questions from the United States District Court for the Western District of Louisiana, Lake Charles Division.

We have answered the certified questions as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this Court upon the questions certified shall be sent by the Clerk of this Court under its seal to the United States Western District Court of Louisiana and to the parties.

**CERTIFIED QUESTIONS ANSWERED**

# SUPREME COURT OF LOUISIANA

## No. 2024-CQ-00449

## POLICE JURY OF CALCASIEU PARISH

## VS.

## INDIAN HARBOR INSURANCE CO., ET AL.

*On Certified Question from the United States District Court for the Western District of Louisiana Lake Charles Division*

**WEIMER, C.J.**, additionally concurring.

I am in full agreement with the thorough analysis employed in the majority opinion to correctly answer the certified questions. I write separately to emphasize that an arbitration clause is separate and distinct from a forum or venue selection clause.

There is no question that compulsory arbitration clauses deprive the courts of *jurisdiction*, while forum or venue selection clauses do not. See **Creekstone Juban I, L.L.C. v. XL Insurance America, Inc**., 18-0748 (La. 5/8/19), 282 So.3d 1042, 1052-53 (Weimer, J., concurring). The statutory prohibition of agreements in insurance contracts which deprive Louisiana courts of the "jurisdiction of action" "is directed at agreements that have the effect of excluding judicial remedies," such as arbitration provisions. *Id*. at 1053. A forum selection clause is simply a provision which mandates a particular state, county, parish, or court as the proper venue. **Shelter Mut. Ins. Co. v. Rimkus Consulting Group, Inc. of Louisiana**, 13-1977 (La. 7/1/14), 148 So.3d 871, 873. By its plain language, La. R.S. 22:868(D) only applies to "forum or venue selection clause[s]" and cannot be read broadly to permit a clause pertaining to jurisdiction, such as an arbitration clause. The general

1

prohibition on agreements in insurance contracts that deprive courts of jurisdiction contained in La. R.S. 22:868(A)(2) must still be applied to prohibit arbitration clauses.

I recognize there has been some past jurisprudential suggestion that an arbitration clause is a type of venue or forum-selection clause. See, e.g., **Donelon v. Shilling**, 19-00514, p. 4 (La. 4/27/20), 340 So.3d 786, 790 n.6 ("An arbitration clause has been characterized by this court as a type of venue selection clause.") (citing **Hodges v. Reasonover**, 12-0043, p. 10 (La. 7/2/12), 103 So.3d 1069, 1076 ("An arbitration clause does not inherently limit or alter either party's substantive rights; it simply provides for an alternative venue for the resolution of disputes."); **Stadtlander v. Ryan's Family Steakhouses, Inc.**, 34,384, p. 11 (La.App. 2 Cir. 4/4/01), 794 So.2d 881, 890 ("An arbitration agreement is a 'kind of forum-selection clause,'" ... "and that by agreeing to arbitrate a particular cause of action, parties do not forgo any substantive rights, but only agree to submit to the jurisdiction of an arbitral, rather than a judicial, forum.") These cases do not pertain to interpretation of La. R.S. 22:868 or the questions before this court. Additionally, the statements made in these cases appear to be *dicta*, and have no bearing on this court's current decision. To the extent any of these statements suggest there is no distinction between arbitration clauses and venue selection clauses in the context of interpreting La. R.S. 22:868, I find these statements to be incorrect statements of law.